# TRAUN *vs.* KEIFFER AND WIFE.

### [DETINUE FOR SLAVES.]

1. *Coercing satisfaction of judgment.*—A judgment in detinue, in favor of the plaintiff, having been reversed on error, at the instance of the defendant, after satisfaction had been coerced under execution, the plaintiff cannot be required, before proceeding with another trial of the cause, to restore the money and property to the defendant or to the sheriff.

2. *Admission implied from payment under legal process.*—The delivery of property to the sheriff, or the payment of its assessed value in money, under process in his hands issued upon a judgment which is afterwards reversed, is no admission or acknowledgment of the plaintiff's title.

3. *Evidence rebutting admission implied from silence.*—Defendant having proved, that the slaves in controversy were appraised as a part of the estate of his intestate, in plaintiff's presence, and that plaintiff then asserted no title in herself, it is competent for the plaintiff to rebut this evidence, by proof of her private assertions of title to one of the appraisers, before the completion of the appraisement.

4. *Estoppel en pais from silence.*—If a person suffers another, in his presence, to purchase from a third person property to which he has a title, of which title the purchaser is ignorant, his failure to assert his title will estop him from afterwards setting it up against such purchaser ; but mere silence, upon which no action has been predicated, no liability incurred, and from which no loss has been sustained, cannot amount to an estoppel.

5. *Statute of limitations available under general issue in detinue.*—In detinue, the defense of the statute of limitations is available under the plea of *non detinet.*

6. *What constitutes adverse possession.*—The donor's subsequent possession and control of slaves, "as his own property," does not necessarily constitute an adverse possession against the donee, who was his niece, and who lived with him as his housekeeper.

7. *Charge on sufficiency of evidence.*—Where there is any evidence, however weak, tending to establish a material question in the case, the court may properly refuse to charge the jury that it is insufficient.

8. *General charge on evidence invading province of jury.*—When there is any conflict in the evidence on a material point, the court may properly refuse a general charge in favor of either party.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Mary Wittick, then a *feme sole*, against Henry Traun, to recover a negro woman, named Betsey, and her seven children, Dick, Jim, Lucy, Sarah, John, Ann, and Edward. The plaintiff having

intermarried, pending the suit, with one Louis Keiffer, her husband was made a party with her. At the fall term, 1852, a judgment on verdict was rendered for the plaintiff, which was amended *nunc pro tunc* at the next ensuing term; and this amended judgment was reversed by this court, at its June term, 1855, and the cause remanded, as shown by the report of the case in 27 Ala. 570. When the case was called for trial, as appears from the bill of exceptions in the present record, "the defendant showed to the court that, at a former term, a judgment on verdict was rendered against him, for all the slaves in controversy except the girl Ann; that an execution in the usual form was issued on this judgment, and placed in the hands of the sheriff of the county; that satisfaction of said execution being demanded by the sheriff, defendant delivered up to him, in satisfaction thereof, four of said slaves, and paid in cash the alternate value of the others as assessed by the jury; that the execution was thereupon returned by the sheriff 'satisfied,' and the negroes and money received under it were handed over by him to the plaintiff; that said judgment was afterwards reversed by the supreme court, on writ of error, and the cause remanded; that plaintiff still retained the slaves and money collected under said judgment, and refused to return the slaves or to refund the money; that defendant afterwards brought his action of detinue against plaintiff, in the circuit court of Lowndes, for two of said slaves, Betsey and Edward, and now had them in his possession under a statutory bond given in said suit; that plaintiff had recovered a judgment in that action, and defendant had appealed to the supreme court. On this state of facts, the defendant insisted that, before going to trial, the plaintiff should be required to place him in *statu quo*, by refunding the money and restoring the slaves, or, at least, by delivering the slaves to the sheriff, and paying the money into court, to be subject to further proceedings in the premises; and moved the court accordingly. But the court overruled the motion, and required the defendant to go to trial; and the defendant excepted."

The defendant pleaded, "in short by consent," 1st, *non detinet*; and, 2dly, "that the slaves sued for came to defendant's possession, after the death of his intestate, as a part of his estate, and that he held the same as such,—the said slaves being in the possession and the property of said intestate in his lifetime."

All the evidence is set out in the bill of exceptions, but a brief summary of it is sufficient to explain the questions which are here presented for revision. The plaintiff claimed the slaves in controversy, under a parol gift of Betsey, the mother of the others, from Frederick Wittick, who was the uncle of her first husband; while the defendant relied on the title of said Frederick Wittick, of whose estate he was the administrator. The plaintiff adduced evidence, tending to show that she and her first husband, who were natives of Germany, came to the United States on the invitation of Frederick Wittick, in 1836; that her husband died on his arrival in Mobile; that she soon became dissatisfied with the country, and desired to return to Germany; that said Wittick, to induce her to remain here and live with him, gave her the girl Betsey; that she continued to live with him, and attended to his domestic affairs as his housekeeper, from that time until his death, which occurred in 1850; that Wittick always recognized the girl Betsey as belonging to her, admitted her title, asked her permission about the employment of the girl, &c. On the part of the defendant it was proved, that the slaves remained in the possession of said Wittick, and upon his plantation, up to the time of his death; that several persons, who were employed about the place in different capacities, had never heard of the plaintiff's claim of title to them; that after the death of said Wittick, the slaves passed into the possession of defendant as his administrator, and were appraised as part of his estate; that plaintiff was present at the appraisement, and made no objection to the slaves being included as a part of the assets, though she claimed several articles of household furniture. In rebuttal of the defendant's evidence on this last point, the plaintiff proved, by one of the appraisers, "that after the appraisement, but before the appraisers

had dispersed, and before they had signed the appraisement," she called the witness into a private room, and there stated to him that she claimed Betsey and her children; and the witness further stated, that he never communicated this fact to the other appraisers or to the defendant. The defendant objected to this evidence, and moved the court to exclude it from the jury; and also excepted to the overruling of his objection.

The plaintiff offered to prove, by one Harris, "that he, as sheriff of Dallas county, had received an execution from this court, in favor of plaintiff, and against defendant, for seven of the slaves in controversy, or their alternate value as assessed; and that defendant had delivered up to him, on his demand as sheriff, under said execution, a portion of the slaves therein mentioned, and had paid the alternate value of the others. as assessed." The defendant objected to the admission of this evidence, and reserved an exception to the overruling of his objection.

The defendant requested the court to give the following charges to the jury:

"1. If the jury believe from the evidence that the slaves in controversy were on the plantation and in the possession of Frederick Wittick at his death, and went into the possession of his administrator as part of his estate; and that the plaintiff was present while the estate of said Wittick was appraised, and understood and witnessed the appraisement, and saw the slaves in controversy pointed out by the administrator to the appraisers as a part of the estate; and that the appraisers appraised and inventoried them as part of said estate; and that the slaves, as appraised and inventoried, were returned to the probate court, and were treated by the court and administrator as belonging to said estate; and that plaintiff made no objection to the proceedings, and gave no notice to the appraisers or the administrator of any claim to the slaves,—she is now estopped from asserting any claim to said slaves.

"2. If the jury believe the evidence in this case, the plaintiff is estopped from setting up a claim to the slaves in controversy against the administrator of Frederick Wittick.

"3. If Frederick Wittick held continuous possession and control of the slaves in controversy, as his own property, for six years next preceding and down to his death, the plaintiff's claim is barred by the statute of limitations, and she cannot recover; and this applies to each one of the slaves separately.

"4. If the slaves in controversy were in the possession of Frederick Wittick at the time of his death, and then went into the possession of his administrator as a part of his estate,—the said Wittick, up to the time of his death, continuously treating and controlling them as his own—if, under these circumstances, the possession of said Wittick and his administrator continued for six continuous years prior to the commencement of this suit, the plaintiff cannot recover; and this applies to each one of the slaves separately.

"5. It is indispensable to the perfection of a parol gift, that the delivery of the slave by the donor should be proved; and taking all the proof in this case to be true, there is no sufficient proof of the delivery of the woman Betsey and her children.

"6. The delivery of the slaves Betsey and her children cannot be inferred from the facts proved in this case.

"7. The proof in this case is not sufficient to establish a valid gift, from Frederick Wittick to the plaintiff, of the woman Betsey and her children."

The court refused to give any of these charges, and to the refusal of each one the defendant excepted; and he now assigns as error all the rulings of the court to which exceptions were reserved.

WM. M. BYRD, and D. W. BAINE, for appellant.—1. The court below had the power, and should have exercised it, to compel the plaintiff to restore what had been coerced from the defendant under the reversed judgment, before proceeding to another trial, which might give the plaintiff a double recovery.—Hall v. Hrabrowski, 9 Ala. 278; Bradford v. Bush, 10 Ala. 274; Tidd's Practice, 470.

2. The evidence of Harris was incompetent, and ought not to have been admitted. The delivery of the slaves by

the defendant, and his payment of money to the sheriff, being made under legal process then in the officer's hands, could not be considered voluntary; and not being voluntary, no implied admission could properly be inferred from those acts.—1 Phil. Ev. 349; Gamble v. Gamble, 11 Ala. 1010; Byrd v. Odem, 9 Ala. 756.

3. The plaintiff's declarations to Hardy, one of the appraisers, were not admissible as a part of the *res gestæ*. She was not in the possession of the slaves, and could not prove title in herself by her own declarations.—1 Greenl. Ev. § 329; 1 Phil. Ev. 372; Abney v. Kingsland, 10 Ala. 355. These declarations were made after the appraisement, and were not a part of the same transaction.—People v. Green, 1 Parker's Cr. Rep. 11; Stewart v. Sherman, 5 Conn. 244; Ogden v. Peters, 15 Barbour, 562; Roberts v. Trawick, 22 Ala. 493.

4. The plaintiff's failure to claim the slaves at the time of the appraisement, coupled with the fact that the administrator returned them in his inventory, operates an estoppel against the plaintiff, which is not avoided by her subsequent private claim to one of the appraisers, not communicated to the defendant.—McCravey v. Remson, 19 Ala. 436; Pool v. Harrison, 18 Ala. 514; Steele v. Adams, 21 Ala. 534; Garrett v. Lyle, 27 Ala. 586.

5. The third and fourth charges asked, relative to the defense of the statute of limitations, asserted correct legal propositions, and were authorized by the evidence.

6. The facts proved do not, in legal contemplation, establish a parol gift.—Hunley v. Hunley, 15 Ala. 104; Bryant v. Ingraham, 16 Ala. 116; Jones v. Dyer and Wife, 16 Ala. 221; Seawell v. Gliddon, 1 Ala. 52; Blakey v. Blakey, 9 Ala. 391; Sims v. Sims, 2 Ala. 117; Phillips v. McGrew, 13 Ala. 255.

GEO. W. GAYLE, and THOS. WILLIAMS, *contra.*—1. After the issues had been made up, and the parties had announced themselves ready, the court had no power to refuse to proceed with the trial. Nor could the court know, until a trial was had, that the slaves and money did not belong to the plaintiff. If the plaintiff had failed,

the defendant had a perfect remedy. The plaintiff's right having been established, the defendant has not been injured.

2. The delivery of the slaves to the sheriff, and the payment of money to him, under the former recovery, must be regarded as voluntary acts, because the defendant might have superseded the judgment; and being voluntary acts, on which the plaintiff afterwards acted by spending the money, the defendant is thereby estopped. Steele v. Adams, 21 Ala. 534; Lay v. Lawson, 24 Ala. 184; Gwynn v. Hamilton, 29 Ala. 233.

3. The testimony of the witness Hardy, relative to plaintiff's claim of the slaves at the time of the appraisement, was in rebuttal of defendant's evidence on the same point, from which he sought to establish an implied admission.

4. The facts proved do not make out a case of estoppel against the plaintiff. The public assertion of her claim, at the time of the appraisement, would have had no other effect than the private assertion of it had. Her failure to assert her claim publicly gave her no advantage, and did no injury to the defendant Moreover, she was an ignorant foreigner; and a mistake of her legal rights, caused by her ignorance, cannot create an estoppel.—Inge v. Murphy, 10 Ala. 885; Gamble v. Gamble, 11 Ala. 966; Pounds v. Richards, 21 Ala. 424; Hunley v. Hunley, 15 Ala. 91.

5. Possession and control by defendant's intestate, "as his own property," did not create an adverse holding against the plaintiff.—Pool v. Harrison, 16 Ala. 167; Kennedy v. Innerarity, 16 Ala. 239.

6. The 5th, 6th, and 7th charges asked by the defendant, were invasions of the province of the jury, and, for that reason, were properly refused.—Bryan v. Ware, 20 Ala. 687; Freeman v. Scurlock, 27 Ala. 407; Stanley v. Nelson, 28 Ala. 514; Foust v. Yielding, 28 Ala. 658; Ivey v. Owens, 28 Ala. 641; Nelson v. Iverson, 19 Ala. 95; King v. Pope, 28 Ala. 602; Lawler v. Norris, 28 Ala. 675.

WALKER, J.—The defendant's motion, to require the plaintiff to restore the slaves and money received by her, or to return them to the sheriff, before proceeding to trial, was properly overruled. The principle settled in the two cases of Hall v. Hrabrowski, 9 Ala. 278; and Bradford v. Bush, 10 Ala. 274, manifestly has no application here. That principle is, that a plaintiff shall not take the benefit of the reversal of a judgment, while he asserts the validity of the judgment by retaining money collected under it. Here the defendant has obtained a reversal of the judgment; and he may fully protect myself, by pleading in an appropriate manner the facts upon which his motion is predicated. If the property and money belong to the plaintiff, it would be extremely unjust to compel the restoration of them to the wrongful possession of the defendant. Whether they belong to the plaintiff or defendant, can only be judicially ascertained upon the trial of the case.

2. The surrender of property to the sheriff, and the payment to him in money of the assessed value of other property, in obedience to process in his hands, issued upon a judgment afterwards reversed, is no admission or acknowledgment of the plaintiff's title. It is an involuntary and compulsory surrender, and cannot be evidence of the plaintiff's title. For this reason, the court erred in overruling the defendant's objection to the testimony of the witness Harris.

3. The defendant proved, that the slaves claimed by the plaintiff had been appraised as a part of the estate of his intestate, in the presence of the plaintiff; and that she did not assert any claim to the property at the time which was heard by the defendant's witnesses. The tendency of this testimony was, to authorize the inference of an admission by the plaintiff from her silence. Her silence on that occasion thus became a fact in the defense of the case; and the question whether she was or was not silent became a material question of fact in the case. Her declarations, asserting her title on the occasion, afford the only possible evidence by which she could protect herself against the inference to be drawn from the proof made

by the defendant. The inference to be drawn was predicated upon her omission to assert her claim while the property was being appraised as a part of the estate of defendant's intestate. The declarations given in evidence were made to one of the appraisers, separately from the rest, during the interval between the valuing of the property and the signing of the bill of appraisement. This evidence conduced strongly to establish the fact, that she did not permit the appraisement of the property claimed by her to be completed, without the assertion of her claim; and was, therefore, properly admitted, for the single purpose for which it was offered, to rebut the proof of her silence. It would have been the duty of the court, to have instructed the jury that no part of the declarations should be considered for any purpose, except to rebut the proof of her silence as to her right on that particular occasion. The defendant did not make such a motion, but asked an exclusion of the entire evidence, and of its different parts. This the court, as we have already decided, properly refused, because it was admissible for a single purpose.

4. The mere omission to assert one's title can never amount to an estoppel, unless the silence operates injuriously to the person in favor of whom the estoppel is asserted. If one, having a title, is present, and remains silent, while another purchases from a third person, in ignorance of such title, the doctrine of estoppel will apply. But there is no room for its application to a case where no action has been predicated, no liability has been incurred, and no loss sustained, in consequence of such silence.—Steele v. Adams, 21 Ala. 534. The defendant in this case does not appear, from the facts proved or hypotheticated in the charge, to have done any act injurious to him, which the open assertion of the plaintiff's title would have prevented.

5. The defense of the statute of limitations was available to the defendant under the plea of *non detinet*.—Lay v. Lawson, 23 Ala. 377.

6. The third and fourth charges, in reference to the statute of limitations, asked by the defendant, were prop-

erly refused. The third charge makes the defense under that statute depend upon a possession and control by the defendant's intestate of the slaves in controversy, *as his own property*. The defendant may have possessed and controlled the slaves as his own property—that is, he may have treated them in every respect as his own property—and yet he may not have held adversely to the plaintiff, or claimed any title in himself. All that the charge contains is not inconsistent with the supposition of a title admitted in the plaintiff, and of a holding for her under a gratuitous bailment incident to the relation in which the plaintiff and the defendant lived towards each other. The vice of the charge is, that it would have authorized a recovery by the defendant, although the possession of the defendant's intestate had been continuously under and for the plaintiff. All that the charge contains may be true, and yet the plaintiff may have a right to recover. The fourth charge is obnoxious to the same objection. That charge merely varies the phraseology, by characterizing the possession of the defendant's intestate as being accompanied by the treatment and control of the slaves by him as his own, and avers a possession in the defendant, as administrator, during the time (which was less than eighteen months) between the commencement of the administration and the institution of the suit.

7. The evidence certainly conduced to show a parol gift, and a delivery to the plaintiff.—See Ivey v. Owens, 28 Ala. 641. However weak the proof may have been, the court properly refused to charge the jury, that it was insufficient to establish a delivery. If there was any proof, it was the province of the jury to determine its sufficiency.

8. There was not only proof conducing to show a parol gift and delivery, but there was also some conflict as to the question, whether the possession of the defendant's intestate was, before his death, adverse; and therefore, the court was not authorized to give the charge, that the jury must, if they believed the evidence, find for the defendant.

The judgment is reversed, and the cause remanded.