## WALLS AND WIFE *vs.* GRIGSBY, ADMINISTRATOR.

[SETTLEMENT OF ESTATE—ESTOPPEL—CONVERSION.]

1. *Administrator; failing to take security becomes liable.*—It is the duty of an administrator, on selling property of the estate, on a credit, to take note or bond, with two sufficient sureties, and if he fails to do so, he becomes liable.—See Code, § 2077 (1752).

2. *Married woman distributee; estoppel.*—Where the administrator of an estate sells a crop of cotton, belonging to the estate, on a credit, and

takes from the purchaser, who afterwards becomes insolvent, a note without sureties, and the husband of one of the distributees of said estate, actively assists in making the sale, but it is not shewn that he knew of, or approved the taking the note without sureties, she will not be held to be estopped from objecting to the note as a credit to the administrator on final settlement.

3. *Administrator; conversion.*—An administrator who lends out the money of the estate, thereby converts it, and so makes himself liable for the amount, on final settlement.

APPEAL from the Probate Court of Limestone.

THIS was a proceeding for final settlement of his accounts, in the probate court of Limestone county, between E. W. Grigsby, surviving administrator of the estate of Amos B. Murrah, deceased, and the heirs and distributees of said estate, among whom were John W. Walls, and Nancy, his wife, formerly Nancy Murrah, daughter of the decedent, the appellants in this case.

On said final settlement, Grigsby, the administrator, asked to be allowed a credit for a note for $3,294.13, made by the firm of W. P. Tanner & Co., and payable to the administrators of Murrah, dated 1st February, 1860, and payable 1st January, 1861. The proof, in reference to this note, showed, that it had been given by the firm of W. P. Tanner & Co., then a wealthy mercantile firm, for a crop of cotton belonging to the estate, which had been sold to them by the administrators, (L. R. Murrah, the other administrator, being then living). It was shewn, that Walls had been quite active in making and promoting this sale, and had expressed himself as much pleased with it; and the same was the case with others of the adult distributees. But the note was taken without security, and the proof did not go to the extent of showing, that Walls had expressly advised, or consented to this; and there was no proof that his wife, Nancy, had taken, personally, any part in the matter. At the time of the settlement, the makers of the note had become insolvent, and Walls and wife moved to reject the credit. This the probate court refused, and allowed the credit, and the appellants excepted.

The said administrator asked to be credited with the sum of $906 in Confederate money remaining on hand,

alleging that it had been received *bona fide* in behalf of the estate, in the course of his administration. But it was also shown, that $600 or $700 of this Confederate currency had been received by him in payment of money of the estate which he had previously loaned out; and as to the balance of the Confederate money brought in, there was no proof, other than the affidavit of the administrator, that it was the money of the estate. The motion of the appellants to reject this credit, was overruled, and the credit allowed, and appellants excepted. A final settlement was made, and decree rendered on this basis, from which Walls and wife appealed, and assign for error, the rulings of the court aforesaid.

WALKER & BRICKELL, for appellants.
RICE, SEMPLE & GOLDTHWAITE, *contra*.

A. J. WALKER, C. J.—It was unquestionably the duty of the administrator, Grigsby, to take two sufficient sureties on the notes given for the crop of cotton sold by him, on a credit, to W. P. Tanner & Co., and he is responsible for the loss resulting from his failure to do so, unless he is exempted from the operation of a general principle for some reason apparent in the case.—Revised Code of Alabama, §§ 2073, (1750,) 2077, (1752.)

The excuse for the omission to take security required by law set up, is, that it was done with the assent of the distributees of the estate. Walls and wife (the latter being a distributee) objected to the credit. This they had a right to do, unless they have estopped themselves from making the objection. If it appeared that Mrs. Walls had a statutory separate estate in her distributive share, it would be plain that she was not estopped, for there was no evidence that she was present or knew anything of the giving of the note, but we can not ascertain from the record when the intestate died, or when Mrs. Walls was married, and therefore we are unable to determine whether the distributive share is affected by the law in reference to separate estates or not. But if the distributive share accrued to Mrs. Walls, and she was married before the passage of the

first married woman's law, in 1848, still there is no estoppel. There is no positive evidence that Walls himself, knew that security was dispensed with. It may be argued that he did, but if he did, it does not appear that he assented to the not requiring the security, or made any declaration which caused the administrator to dispense with the security. It was the legal duty of the administrator to take the security, and his omission of it can not be excused upon the mere ground that the distributee's husband, who may not have known what was the administrator's duty, was present and made no objection, if such was the fact We think there is no ground upon which it can be held that the distributee was estopped from objecting to the credit.—*Hopper v. McWhorter*, 18 Ala. 229; *Steele v. Adams*, 21 Ala. 534; *Colbert v. Daniel*, 32 Ala. 314, 327; *McKleroy v. Tulane*, 34 Ala. 78; *Traun v. Keiffer*, 31 Ala. 136; 2 Smith's L. Cases, 661.

The only Confederate money proved to have been received by the administrator was that paid by Coman and Tanner. At the time of the trial, the affidavit of the administrator was not evidence in his favor. The administrator had no right to loan the money of the estate, and he is chargeable at the election of the distributees for money so loaned as upon a conversion of the assets. As the whole of the Confederate money brought in was received in payment of debts for money loaned, the administrator had become liable for it, by the loan, at the election of the distributees. There was, therefore, no evidence to sustain the credit, and it should have been rejected.—*De Jarnette v. De Jarnette*, in MMS. There was no proof tha. any Confederate money on hand belonged to the estate, and constituted a legal credit for the administrator.

Reversed and remanded.