# Scruggs *v.* Decatur Mineral & Land Company.

*Bill in Equity for Cancellation of Conveyance on grounds of Fraud and Undue Influence.*

| 86 | 173 |
| 106 | 542 |
| 109 | 444 |
| 86 | 173 |
| 111 | 306 |
| 114 | 355 |
| 86 | 173 |
| 128 | 388 |
| 128 | 399 |
| 86 | 173 |
| 129 | 265 |
| 86 | 173 |
| 135 | 459 |
| 86 | 173 |
| 141 | 640 |

1. *Statute of limitations in equity, and stale demands.*—The statute of limitations being made expressly applicab'e to suits in equity (Code, § 3419), a suit to vacate and set aside a conveyance, on allegations of fraud and undue influence, is barred by the unexplained lapse of ten years, which would bar an action of ejectment at law; and in cases which are not within the statutory rule, the court will refuse relief, where there has been unreasonable delay, and long acquiescence, unexplained, in the assertion of adverse rights.

2. *Same; how taken advantage of.*—When the bill shows on its face that there has been an adverse possession for the full period prescribed as a statutory bar, or acquiescence in the assertion of a hostile title for a period sufficient to render the demand stale, the defense may be made by demurrer; otherwise, it must be made by plea or answer.

3. *Possession referred to title.*—Where two persons are jointly in possession of land, the legal title being in one of them only, the law refers the possession to the title; and the possession of the other will not be considered adverse, in the absence of an express averment and proof of facts showing its adverse character.

4. *Fraud, as exception to statute of limitations.*—In actions seeking relief on the ground of fraud, a party is allowed one year after the discovery of the fraud within which to sue, notwithstanding the statute of limitations (Code, § 2630); but, where there has been no fraudulent concealment, mere ignorance of his rights by the plaintiff, without excuse or explanation of its continuance for an unreasonable period, does not bring him within the statutory exception.

5. *Case at bar.*—The complainants in this case seeking to vacate and set aside, on the grounds of undue influence and fraud, a conveyance of

[Scruggs v. Decatur Mineral & Land Company.]

land executed by their deceased father to his step-daughter, their bill was held to have been properly dismissed on demurrer, as barred by the statute of limitations and the staleness of the demand, because it showed that the deed was executed in June, 1868, and duly acknowledged and recorded in August of that year; that the grantor continued to reside on the land with his family, the grantee being one of them, until the death of her mother, his wife, in 1876, when he removed to Mississippi, where he died in 1882; and it not appearing that he ever complained of any fraud or undue influence in the procurement of the deed, or asserted any title adverse to the grantee while he was in possession of the land jointly with her, or that the complainants ever made any inquiry into their alleged rights until a short time before filing their bill in March, 1888.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 9th March, 1888, by Solomon E. Scruggs and others, children and grandchildren of Finch P. Scruggs, deceased, by his first marriage, against the Decatur Mineral and Land Company, a private corporation organized under the general statutes, Mrs. Susan J. Nelson, formerly Murphy, and several other persons; and sought to vacate and set aside, on the alleged grounds of fraud and undue influence, a conveyance of a tract of land near Decatur, which said F. P. Scruggs had executed to said Susan J. Murphy, who was his step-daughter. The tract of land contained about ninety acres. The conveyance was dated June 20th, 1868, and recited as its consideration the present payment of $1,800. It contained the usual covenants of warranty, and was admitted to record, on acknowledgment by the grantor, on the 6th August, 1868; but a certificate, or memorandum, was appended at the bottom, signed by the grantor, in these words: "I hereby certify, that a deed, similar in purport to the above, was made in the year 1858, but was not recorded; and that it was lost or mislaid during the late war, and can not now be found; and that the title to the above described property was vested fully in the said Susan J. Murphy from that date, namely, in the year 1858;" and the certificate of acknowledgment describes the deed as a "duplicate conveyance."

The chancellor dismissed the bill on demurrer, and on motion to dismiss for want of equity, on the ground that it was barred by the statute of limitations, and by the staleness of the demand; and his decree is now assigned as error.

O. KYLE, with whom was JOHN D. WATSON, for appellant. That the bill makes a case for relief, on the ground of

[Scruggs v. Decatur Mineral & Land Company.]

undue influence, see *Rumph v. Abercrombie*, 12 Ala. 64; *Waddell v. Lanier*, 62 Ala. 347; *Humphreys v. Burleson*, 72 Ala. 1; *Jenkins v. Bradford*, 59 Ala. 400; *Dickinson v. Bradford*, 59 Ala. 581; *Noble v. Moses*, 74 Ala. 604; 69 Ala. 565; 9 Ala. 684; 62 Mo. 228; 18 Pick 115; 50 Mo. 206; 12 Vesey, 373; *Nichols v. McCarthy*, 53 Conn. 299; *Oakey v. Ritchie*, 69 Iowa, 69; *Crane v. Conklin*, 1 Saxt. Ch. 346; *Hunt v. Hunt*, 2 Beasley's N. J. Eq. 161; *Miller v. Miller*, 68 Penn. St. 486. The right to relief is not barred by the statute of limitations, under the allegations of the bill, which are admitted by the demurrer.—Code, § 2630; *McCarthy v. McCarthy*, 74 Ala. 554; *Morgan v. Morgan*, 69 Ala. 80; *Porter v. Smith,* 65 Ala. 169; *Holt v. Wilson*, 75 Ala. 66; *Parker v. Kuhn*, 59 Amer. Rep. 838; *James v. James*, 55 Ala. 533; 2 Vesey, 83; *Brooks v. Gibbons*, 4 Paige, 374.

Humes, Walker, Sheffey & Gordon, and Thos. M. Scruggs, *contra*, cited Code, § 3419; *McCoy v. Gentry*, 73 Ala. 105; *James v. James*, 55 Ala. 532; *Love v. Love*, 65 Ala. 654; *Cotton v. Cotton*, 75 Ala. 75; *Thompson v. Parker*, 68 Ala. 387; *Molton v. Henderson*, 62 Ala. 426; *Ware v. Curry*, 67 Ala. 274; *Harold v. Weaver*, 72 Ala. 373; *White v. Farley*, 81 Ala. 567; *McCarthy v. McCarthy*, 74 Ala. 555; *Holt v. Wilson*, 75 Ala. 66; *Harrison v. Heflin*, 54 Ala. 552; *Phillippi v. Phillippi*, 61 Ala. 41; *Nettles v. Nettles*, 67 Ala. 599; 63 Ala. 381; 67 Ala. 45; 51 Ala. 431. . .

CLOPTON, J.—The appeal being taken from a decree sustaining a demurrer to the bill, on the ground that the claim of the complainant is stale, and barred by the statute of limitations, a condensed statement of its substantial allegations is essential to a proper consideration and understanding of the questions raised by the demurrer.

Finch P. Scruggs, the father of complainant, purchased the land in controversy in March, 1851. Prior to its purchase, he had married Susan J. Murphy, both parties having been formerly married. On June 20th, 1868, he made a deed of about ninety acres of the land, on a recited consideration of eighteen hundred dollars, to Susan J. Murphy (now Nelson), who was a daughter of his second wife, born of her first marriage. To the deed is appended a certificate, that it was executed in lieu of one made in 1858, which was lost or

mislaid during the war, and had not been recorded. The complainants, being children of Scruggs, born of his first marriage, sue as heirs at law, and seek by the bill to have the deed declared inoperative and vacated, on the alleged ground, that its execution was obtained by undue influence and false representations. The father of complainants resided with his family on the premises, from the time of the purchase in 1851, until 1864, when he was driven away by the military authorities. After the close of the war he returned, erected buildings and other improvements on the land, exercised other acts of ownership, and continued to reside thereon, until the death of his wife in 1876. The grantee, his step-daughter, lived with him as a member of his family, and was treated with the affection due his own child. As the special facts constituting the undue influence and false representations, by means of which the deed was procured, the bill avers that Scruggs, the grantor, was old and feeble, physically and mentally, in his dotage, had great confidence in his step-daughter, and frequently advised with her in his business matters, whereby she gained a controlling influence. She and her mother persistently impressed him with the apprehension, that his property was in great danger of being confiscated, and that if the title was conveyed to his step-daughter, who had been loyal to the Federal Government, and it could be made to appear that the property belonged to her before and during the war, she could prevent its confiscation, and recover large compensation for the damages committed by the Union forces. The bill further avers, that no part of the consideration price, expressed in the deed, was paid, and that no conveyance was made in 1858, as stated in the annexed certificate. The bill was filed March 9, 1888.

It may be conceded, that on timely application, by parties having a right to complain, a court of equity would vacate and cancel the deed on the allegations of the bill being proved. Section 3419 of the Code, 1886, makes the statute of limitations applicable to suits commenced by bill in chancery. Under that statute, a suit in equity will be barred by the lapse of the time prescribed as a bar to a corresponding legal remedy. The object of the bill being to avoid the legal title, and assert an equitable right to real estate, the corresponding legal remedy is an action of ejectment. If, therefore, there has been acquiescence in a possession, hostile to the title complainants assert, for a period of ten years before the commencement of the suit, it is barred, unless

[Scruggs v. Decatur Mineral & Land Company.]

there are excusable or explanatory circumstances, which take the case out of the operation of the statute. Independent of statutory limitations, courts of equity act on a rule peculiar to themselves, which is designed to promote diligence on the part of suitors, by refusing the enforcement of stale demands. The rule is not abrogated by the statute making the limitations of actions at law applicable to suits in chancery. The statutory limitations, and the peculiar rule, coexist. In cases not coming directly within the operation of the statute, the court refuses relief, where there has been unreasonable delay, and long unexplained acquiescence in the assertion of adverse rights; where the party complaining does not bring himself within the principle—"conscience, good faith and reasonable diligence"—on which activity in awarding relief depends. *Nettles v. Nettles,* 67 Ala. 599; *James v. James,* 55 Ala. 525.

It is contended, that the bill does not bring the case *prima facie* within the bar of the statute of limitations, or within the operation of the rule against the enforcement of stale demands; and therefore the defendants can not avail themselves of the defense by demurrer, but should be put to their plea or answer. It is a well settled rule, that unless it is apparent upon the face of the bill that there has been an adverse possession for the period prescribed as a bar to the corresponding legal remedy, or acquiescence in the assertion of the hostile title for a period sufficient to render the demand stale, the defense can not be set up by demurrer. *Shorter v. Smith,* 56 Ala. 298. This rule necessitates consideration of the proper interpretation and legal effect of the allegations of the bill, when construed as a whole, and most strongly against the complainants.

The bill avers, that after the war the grantor erected buildings on the land, paid the taxes, collected rents, caused it to be plotted, streets laid out, and exercised other acts of ownership. These things were done prior to the execution of the deed, and are material only as tending to create suspicion or disbelief of the truth of the statement in the certificate appended to it, that a conveyance was made in 1858. There is no distinct and positive averment of any act of ownership adverse to the title of the grantee, after the deed was made. The allegation of the specific acts, above stated, is preceded by a general averment, that the grantor "enjoyed the sole undisputed possession and control thereof in his own right until the date of his death." This general allegation is not only qualified by the time when the specific acts occurred,

but is inconsistent with, and repugnant to the specific facts alleged, that in 1876, on the death of his wife, he quit the possession of the land, going to Mississippi, where his son lived, with whom he resided until his death in 1882. During this period of six years, he was not in the actual possession of the land, nor is it averred that he was in possession by others holding under him, or that he asserted any claim whatever thereto. His possession, after the execution of the deed, does not necessarily constitute an adverse possession against the grantee, who lived with him as a member of his family. The title being in her, and both being in possession, the law refers the possession to her title. In such case, his possession will not be regarded adverse, in the absence of averments of facts showing an adverse character.—*Traun v. Keiffer*, 31 Ala. 136; *Bragg v. Massie*, 38 Ala. 89. Possession is continuous in its nature. Both the grantor and the grantee being in joint possession, when he abandoned possession in 1876, and moved to Mississippi, the presumption is, that the grantee continued in the sole possession, claiming under her title. He surrendered the entire possession to her, and at that time her possession became sufficiently adverse to put the statute of limitations in operation. Independent of this consideration, if the deed was obtained by undue influence and false representations, a cause of action accrued in his favor to have it vacated and cancelled immediately on its execution. The bill does not aver any distinct and positive assertion of claim to the land, adverse to the title of the grantee, during their joint occupancy. If it be said that he was, during that period, under the control and influence of herself and her mother, this can not be asserted after the death of the wife, and during the time he was in Mississippi residing with his son. So far as appears from the bill, he acquiesced in the title of the grantee, from the time of the execution of the deed until his death, a period of about fourteen years; and the complainants acquiesced for nearly six years after his death, before filing the bill.

Complainants further contend, that the case comes within the operation of the statute, which allows, in actions seeking relief on the ground of fraud, one year after its discovery within which to prosecute the suit. The bill avers that they did not discover the fraud until 1887. *Laches* will not be imputed, until after discovery of their rights. But mere ignorance of right, without excusing or explaining its unreasonable continuance, is insufficient. "Ignorance of right

in the party complaining, there being no more than passiveness, mere silence on the part of his adversary, can not be engrafted as an exception on the statute of limitations, without a destruction of its wise policy, and without an encouragement of mere negligence."—*Underhill v. Mo. Fire Department*, 67 Ala. 45; *James v. James, supra.* When the case stated is *prima facie* within the bar of the statute, or offensive to the rule against the enforcement of stale demands, the complainant must positively and distinctly aver the facts and circumstances which constitute an exception to the statute, or which excuse or explain the long acquiescence and delay.—*Phillippi v. Phillippi*, 61 Ala. 41.

No concealment, or attempt at concealment on the part of the grantee, is averred. She was merely passive and silent. The deed bears date June 20, 1868; its execution was acknowledged by the grantor on the 6th day of August thereafter, and it was on the same day filed for record in the office of the judge of probate, and duly recorded. It was registered where it was open to public inspection. The complainants, as heirs and distributees, were interested in the estate of the grantor; they left the home of their father on his second marriage, and yet made no inquiries with regard to its disposition. They had reason to believe that their father had disposed of the land; for the bill avers, they had always supposed that he had disposed of it at a fair value before his death. This supposition further shows that their father never complained to them of the deed made by him. If inquiries had been made at any time after the father moved to Mississippi, they could then as easily have ascertained the facts, with more certainty and more probability of proof, which they alleged they subsequently ascertained in 1887. We concur with the chancellor in his conclusion, that the claim is barred by the statute of limitations, and that the demand is stale.

Affirmed.