## Gurley, *et al. v.* Robertson, *et al.*

*Bill to Annul a Certain Conveyance for Fraud, and to Subject Land to the Payment of Debt.*

(Decided April 11, 1912. Rehearing denied June 29, 1912.
59 South. 643.)

1. *Judgment; Enforcement of Lien; Equity.*—The fact that it did not appear that an execution would not produce satisfaction of a decree, was no bar to the enforcement in equity of the lien of the decree, recorded under section 4156, Code 1907.

2. *Fraudulent Conveyances; Judgment Lien; Choice of Remedies.* —Under section 3739, Code 1907, persons seeking to enforce a decree against property conveyed in fraud of their claim, and upon which they had no lien, are entitled to a bill in equity to set aside the fraudulent conveyance; and under section 4293, such right does not depend upon the insolvency of the debtor.

3. *Judgment; Foreclosure Decree; Collateral Attack; Laches.*— Where the liability of obligors on notes secured by mortgage was contingent on a deficiency decree being rendered, laches in the foreclosure of the mortgage could be raised only in the foreclosure pro-

[Gurley, et al. v. Robertson, et al.]

ceedings, and not in a subsequent proceeding in equity to enforce the deficiency decree.

4. *Limitation of Action; Fraudulent Conveyance; Accrual; Commencement.*—Where debtor executed joint notes secured by mortgage, and controlled by a contemporaneous collateral agreement under which their liability could not become fixed until a deficiency decree was rendered, the statute of limitations did not commence to run, either in favor of the debtors as to the property retained by them, or in favor of parties to whom the debtor conveyed property in fraud of creditors, until the liability of the debtors became fixed by such a decree, although, as regards the property fraudulently conveyed, limitations would have begun to run from the date of the conveyance, but for the contingent nature of the liability.

5. *Guaranty; Guarantors; Sureties.*—The obligors on notes secured by mortgages and controlled by a contemporaneous collateral agreement making their liability contingent upon a deficiency decree being entered, were guarantors rather than sureties.

6. *Mortgages; Deficiency Decree; Enforcement; Laches.*—The maintenance of a bill in equity to enforce a deficiency decree against obligors on notes secured by mortgages, was not barred by laches, where the bill was filed within the limitation period, and where there had been no change, operating to the detriment of defendant, as would render the granting of the relief prayed inequitable.

7. *Same.*—Such a bill was not objectionable as being for the enforcement of a stale demand; the distinction between staleness of demand and laches being more technical than inherent.

8. *Bankruptcy; Discharge; Release of Guarantor.*—A discharge in bankruptcy of one guarantor did not release his co-debtors, although the creditor failed to prove his claim against the bankrupt estate.

APPEAL from Madison Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Robertson and Bouldin, as administrators against F. D. Gurley and others, to annul a certain conveyance for fraud, and to subject the land and other land to the satisfaction of a pecuniary decree belonging to the estate. Decree for complainants and respondents appeal. Affirmed.

DAVID A. GRAYSON and R. E. SMITH, for appellant. The bill is tantamount to a suit for recovery of the land.—*Norwood v. Washington*, 128 Ala. 382. This being true the statue of limitations begins to run from the date on which the creditor could have filed a bill

to set aside the conveyance for fraud.—*Van Ingin v. Duffin,* 48 South. 507. The testator in his life time could have filed the bill on the date of the conveyance. —*In re McHenry,* 3 Ch. 290. It follows, therefore, that the bill is subject to the defense of laches, staleness of demand and limitations.

VIRGIL BOULDIN, and PAUL SPEAKE, for appellee. Under the contract there could be no liability fixed upon the makers of the notes until foreclosure of the mortgage, and the balance of the deficiency ascertained. The grantee in a voluntary or fraudulent conveyance does not hold adversely to the creditor, and the statute does not begin to run until the cause of action accrues to the creditor.—*Washington v. Norwood,* 128 Ala. 383; *Smith v. Pitts,* 52 South. 402. The compromise with Butler was not intended in any way to release or discharge any other party to the decree, or any lien or security held, and it was so stated in the release which must be given effect according to the intention of the parties.—Sec. 3973, Code 1907; *Carroll v. Corbitt,* 57 Ala. 579; *Smith v. Gayle,* 58 Ala. 600; *Home Tel. Co. v. Fields,* 150 Ala. 306; *Cross v. Scruggs,* 115 Ala. 258. The discharge in bankruptcy of one co-debtor did not result in the discharge of the other.—5 Cyc. 401; *Evans v. Evans,* 16 Ala. 465; *Bean v. Chapman,* 62 Ala. 58; *State v. Parker,* 72 Ala. 181; Loveland on Bankruptcy, 725. The judgment was a lien enforceable in equity.—89 Ala. 538; 98 Ala. 200. A bill to set aside a voluntary conveyance may be filed by existing creditors regardless of the solvency or insolvency of the debtor.—Sec. 4293, Code 1907.

SAYRE, J.—Robertson and Bouldin, as administrators of W. A. Clay, deceased, to have satisfaction of a

pecuniary decree recovered by their intestate in 1904, filed this bill on the 19th day of November, 1910, against Frank B. Gurley, Mollie G. Hall, Matilda E. Walker, Frank T. Walker, and William A. Walker, praying that certain conveyances of lands be annulled as in fraud of the rights of complainants' intestate, and the lands subjected to the payment of the decree. As to certain other lands still in the ownership and possession of the defendant Gurley, the bill sought, also to foreclose the lien of the decree, which had been duly recorded in the office of the judge of probate. The questions raised by the demurrers to the bill and the pleas filed by the defendants, all of which were ruled in favor of the complainants in the court below, appellees here, make it necessary to state the origin of the debts and their status on the date of the filing of the bill. In 1891 complainants' intestate and F. B. Gurley, E. F. Walker, J. P. Williams, Samuel Butler, and T. P. Gurley were interested in the construction of the Gurleys & Paint Rock Valley Railroad, and subscribed to the stock of the company having the project in hand. T. P. Gurley was president of the company. To come at once to a statement of the substance and effect of what the parties did, in September, 1892, complainants' intestate made a loan of $15,000 to the railroad company, taking a mortgage on the company's properties. At the same time he took three several joint notes of F. B. Gurley, E. F. Walker, T. P. Gurley, J. P. Williams, Samuel Butler, and R. L. Butler for sums aggregating something over $16,000, to become due and payable in January, 1893. Each of these notes concludes with the stipulation: "Sureties consent that time of payment may be extended without notice thereof." It will be observed that F. B. Gurley alone of the obligors on these notes is made a party defendant; the other de-

fendants being Mollie G. Hall, his grantee, and Matilda
E. Walker, the grantee and widow of E. F. Walker,
another obligator, now deceased, and Frank T. and
William A. Walker, sons and alleged voluntary gran-
tees of Matilda E.   Upon receipt of the mortgage, in-
testate executed and delivered to F. B. Gurley, for him
and the other obligors on the notes, an instrument in
writing, as follows: "Received of F. B. Gurley, pres-
ident of the Gurleys & Paint Rock Valley Railroad
Company, a mortgage on the Gurleys & Paint Rock Val-
ley Railroad, roadbed, franchises, etc., for the sum of
fifteen thousand dollars, funds furnished by me for the
purpose of grading and constructing said railroad. For
which I hold the joint notes of F. B. Gurley, T. P. Gur-
ley, E. F. Walker, Sam Butler, J. P. Williams, and
Robt. L. Butler.  Should it become necessary for me to
foreclose this mortgage to collect the amounts due me
and sell the railroad to collect the same, the said F.
B. Gurley, T. P. Gurley, E. F. Walker, Sam Butler,
J. P. Williams, and Robt. L. Butler are to be credited
on their notes for the proceeds of the sale of the same,
after paying cost of advertising and selling and bal-
ance due on the notes yet unpaid, I pay a pro rata por-
tion with the signers of the notes being equally inter-
ested in the building of said railroad.   Should the pro-
ceeds of the same be more than the amounts due on
said notes then said notes become void and of no effect."
In November 1904, at the conclusion of a suit in chan-
cery brought by complainants' intestate in his lifetime
for the foreclosure of the mortgage, and for decrees
over against the obligors on the notes for any deficiency
after the exhaustion of the mortgage security, the court
rendered decrees for some $13,000 against F. B. Gurley,
as administrator of T. P. Gurley, who had died, and
against F. B. Gurley personally and the other obligors.

The bill admits credits of some $2,600 paid by Williams on November 10, 1904, and $4,000 paid by Samuel Butler on July 23, 1910. Nothing is said of executions for the satisfaction of this decree; but it is averred that the decree was duly filed in the office of the judge of probate of Madison county, where the lands are located. Demurrers, filed separately by the defendants and overruled in the court below, present the question whether, on the facts appearing on the face of the bill, complainants' bill is barred by laches or the statute of limitations of 10 years.

By way of pleas, the defendants set up several matters of defense, as follows: (1) That these defendants had been discharged of the indebtedness alleged in this case by reason of the fact that complainants' intestate, in his lifetime had, for a sum paid by J. P. Williams, released and discharged said Williams from all liability for the indebtedness established by said decree. (2) That complainants, as personal representatives of M. A. Clay, deceased, had entered into a similar arrangement with Samuel Butler. (3) That R. L. Butler, another of the obligors on said notes, had been discharged in bankruptcy, and that complainants' intestate had proved other claims against his estate, but had not proved, nor offered to prove, the claim in question, and had voted for a composition, which was confirmed by the bankruptcy court. (4) Adverse possession of the lands described in the bill for more than 10 years. And the defendants M. E., E. T., and W. A. Walker filed a plea (5) repeating the averments of plea 3, except that the averment of intestate's voting for the composition is omitted. In response to these pleas, or some of them, complainants amended their bill so as to show that the credits acknowledged in the bill and shown in the pleas had been received with express agreement

between the payers and receiptors that they should not operate as discharges or releases of other parties defendant to the decree of 1904. These pleas were held insufficient in the court below, and the rulings to that effect are assigned for error.

Of some lands which are described in the bill, it is averred that they were in the possession and ownership of defendant Gurley at the time the decree of the equity court was filed for record in the office of the judge of probate, and were held and owned by him at the date of the filing of the bill. As to these lands, the bill seeks the enforcement of a lien as of a recorded decree under section 4156 of the Code. As to other lands described in the bill, the same having been conveyed by the debtors of complainants' intestate prior to the rendition of the decree in his favor, though liable to be taken for its satisfaction, we do not understand complainants to contend that they were within the meaning of sections 4156 and 4157 of the Code, the property of defendants in the decree at the time of its rendition or recordation, or that they are under any lien, save such as complainants may have acquired by the filing of this bill. There is some insistence that there is no equity in the bill, because, for aught appearing to the contrary an execution would produce satisfaction of the decree. But the lien of the recorded decree may be enforced in equity, notwithstanding the right to have execution.—*Enslen v. Wheeler,* 98 Ala. 200, 13 South. 473; *Duncan v. Ashcraft,* 121 Ala. 552, 25 South. 735. As to the property alleged to have been conveyed in fraud of the rights of intestate, complainants also had a choice of remedies; the better for all parties being that afforded by a bill in chancery.— *Smith v. Cockrell,* 66 Ala. 64. A creditor without a lien may maintain his bill to set aside a fraudulent

[Gurley, et al. v. Robertson, et al.]

conveyance (Code, § 3739) ; nor does his right depend upon the solvency or insolvency of his debtor.—Code, § 4293; *Metcalf v. Arnold,* 132 Ala. 74, 32 South. 763.

That defendants can take nothing by their alleged adverse possession or by the statute of limitations has been settled in principle by several cases adjudged in this court.—*Washington v. Norwood,* 128 Ala. 383, 30 South. 405; *Smith v. Pitts,* 167 Ala. 461, 52 South. 402; *Bragg v. Patterson,* 85 Ala. 233, 4 South. 716. The effect of the agreement into which the parties entered was to constitute the obligors on the notes made payable to complainants' intestate guarantors of six-sevenths of the face of the notes. The notes were on their face payable at a time fixed, and used the term "sureties," evidently referring to the obligor. The intention of the parties is to be gathered from the contract as a whole; and by the collateral agreement, reduced to writing and delivered contemporaneously, thus in legal effect becoming part and parcel of the notes, there could be no fixed liability upon the makers of the notes until, by a foreclosure of the mortgage, a deficiency was ascertained. If the mortgage security satisfied the debt of the railroad company to intestate, the notes were to be void. Until, therefore, a deficiency was ascertained, liability on the notes was wholly contingent. The obligors on the notes were guarantors.—*Saint v. Wheeler,* 95 Ala. 362, 10 South. 539, 36 Am. St. Rep. 210. But whether technically guarantors or sureties is a matter of no consequence in this case, so long as they are held to have been one or the other. The event upon which their liability became fixed, and upon which intestate's right to sue depended, and, hence, the time from which the statute of limitations and defendants' adverse possession began to run, were fixed by the decree of 1904, less than 10 years before this bill was filed. As against

the property in the hands of the grantees in the conveyances attacked, had intestate's right to proceed not been postponed by the contingent nature of his demand, the statute of limitations would have begun to run from the date of the conveyances.—*Van Ingen v. Duffin*, 158 Ala. 318, 48 South. 507, 132 Am. St. Rep. 29. The case here cited is relied upon by apellants; but, so far from being an authority against our conclusion, it expressly recognizes the doctrine of *Washington v. Norwood*, *supra*, which case we follow.

At page 193 the American and English Encyclopædia of Law (2d Ed.), citing some of our cases along with many others, states the rule as follows: "The right of action or a claim depending on a contingency or condition does not accrue until the happening of the contingency or the fulfillment of the condition, and the statute does not begin to run until then." It adds: "Where, however, it is the right or duty of the claimant to comply with certain conditions, in order to render his right of action absolute, or where the performance of the condition is within his power, such performance must be accomplished within a reasonable time, and the statute will begin to run, not from the time of actual performance, but from the time when it was reasonably practicable." Appellants complain of laches on the part of complainants in the court below, and their intestate. But if there was any negligent delay in foreclosing the mortgage, by which the value of that security was unfavorably affected and the ultimate responsibility of the obligors on the notes held by complainants' intestate unduly swollen, that was matter of discharge and defense against the decree over in the nature of a deficiency decree sought in the foreclosure suit, which the guarantors, who were parties to that cause, should have pleaded there. All inquiry as to that is now foreclosed

by the personal decree in that cause. As for the delay in filing the present bill, it has not exceeded the statutory period of limitations for such cases, as we have shown; nor is any circumstance made to appear, operating to the detriment of defendants, which might have been avoided by a more prompt assertion of their rights by complainants or their intestate. In the absence of some such fact or circumstance, some change in the condition or relations of the parties operating to the detriment of defendants, which would render interference by the court on behalf of the complainants inequitable, the bill must be sustained, so far as the objection for laches is concerned.—*Fowler v. Alabama Company,* 164 Ala. 414, 51 South. 393.

As for the assertion that complainants' bill appears to have been filed for the enforcement of a stale demand, we are of opinion that it cannot be sustained. The delay which will render a demand stale has been discriminated from laches with rather more observance of technical distinctions than inherent difference. "The affirmation that the demand is stale does not imply mere acquiescence in special conditions and circumstances which render it inequitable to enforce the demand; but it implies rather that the suitor has slept upon his supposed rights for so great length of time that it may be justly expected that events have become forgotten, witnesses died or removed beyond the reach of parties, and other means of proof lost or destroyed."—*Ashurst v. Peck,* 101 Ala. 499, 14 South. 541. This is the exact policy and purpose of statutes of limitations which raise, not merely a presumption of payment of just demands from lapse of time, but afford security against stale demands after the true state of the transactions may have been forgotten, or be incapable of explanation by reason of the death or removal of wit-

nesses.—*Campbell v. Haverhill,* 155 U. S. 610, 15 Sup.
Ct. 217, 39 L. Ed. 280.  The doctrine that the staleness
of a demand will prevent relief was adopted by equity
in cases where no statute of limitations directly govern-
ed.—*Johnson v. Johnson,* 5 Ala. 90.  Both the statute
and the peculiar rule are now applied in proper cases.
They proceed upon the same considerations and have
identical operation and effect, and the rule is that, un-
less the reasons which call for the application of the
principle of the defenses are apparent upon the face
of the bill, they cannot be asserted by demurrer.—*Shor-
ter v. Smith,* 56 Ala. 208; *Scruggs v. Decatur Co.,* 86
Ala. 173, 5 South. 440.

No apt authorities are cited in support of those as-
signments of error which seek to review the rulings on
the sufficiency of the several pleas; nor does the ar-
gument for any of them amount to much more than an
iteration of the assignments.  In view of the averments
of the amended bill, intended to meet the averments of
pleas 1 and 2 as stated above, it is enough to say that
the chancellor's rulings as to the sufficiency of those
pleas were in accord with adjudged cases, and must
be sustained.—*Smith v. Gayle,* 58 Ala. 600.

Rulings as to those pleas which set up the proceed-
ings in bankruptcy were also correct.  The discharge of
Butler was by operation of law, and did not affect the
liability of his codebtors.—*State v. Parker,* 72 Ala.
181; *Garnett v. Roper,* 10 Ala. 842; 5 Cyc. 401, note 50.
"The principal's obligation defines the boundary up-
ward, beyond which the surety's obligation cannot be
carried.  So the creditor can do no act by which he re-
duces the principal's liability, without, at the same
time, reducing the surety's liability, at least to the same
extent.  But the rule is very different where the law
reduces or absolves the principal's liability, without the

fault or procurement of the creditor."—*Bean v. Chapman,* 62 Ala. 58. In such case the principal's defense is personal. Nor does it make any difference that the creditor assented to the bankruptcy or accepted its benefits.—32 Cyc. 227, notes. Nor did the failure of complainant's intestate to prove his judgment as a claim against the estate of the bankrupt operate to discharge the latter's codebtors. Said the court in *Evans v. Evans,* 16 Ala. 465: "No case, it is believed, can be found in which it has been held that mere passiveness will discharge the surety. So it has been held that a surety cannot plead that his principal is dead, and due presentment of the claim was not made to his representative. Nor will the omission to present the claim for payment to the representative of the principal in the debt affect the right of the surety to recover from his estate, if he is compelled to pay it."

What has been said will cover the case of the fourth plea, and as well some minor suggestions in briefs for appellants. We find no error, and the chancellor's decree will be affirmed.

Affirmed. All the Justices concur.