# Werborn's Adm'r v. Kahn.

*Bill in Equity for Contribution between Sureties, and to reach and subject Property Fraudulently Conveyed by Deceased Surety.*

1. *Contribution between sureties.*—A surety who has paid or satisfied a judgment or decree rendered against his principal, obtaining a receipt and discharge in full from the liability, may maintain a bill in equity against his co-surety for contribution, although the amount paid was less than his own proportionate share of the debt.

2. *Demurrer to bill, and motion to dismiss for want of equity; allegations of answer.*—On demurrer to a bill, or motion to dismiss for want of equity, the allegations of the answer can not be considered for any purpose; nor will the appellate court consider any defects in the bill which were not specially assigned as grounds of demurrer.

3. *Equitable relief to creditor to reach property fraudulently conveyed by deceased debtor.*—On general principles of equity, without the aid of statutory provisions (Code, § 3544), a creditor may come into equity to reach and subject property fraudulently conveyed by his deceased debtor, on averment and proof of a deficiency of legal assets, since the administrator is bound by the act of his intestate.

4. *Limitation of suit to reach property fraudulently conveyed.*—A surety's right to contribution from a co-surety does not arise until payment of the debt for which they are both bound; and a fraudulent vendee of the deceased co-surety does not acqu re a title as against him under the statute of limitations, until his possession of the personal property conveyed has continued six years.

5. *Receiver; appointment by register without notice; appeal to chancellor.*—When a receiver is appointed by the register without notice to the defendant, and without a proper showing for the failure to give notice, and an appeal to the chancellor is taken from the order, the chancellor may receive additional affidavits *pro* and *con;* and an appeal from his order continuing the receiver raises only the question of its correctness, without regard to the correctness of the register's ruling.

6. *Same; when properly appointed.*—When a creditor files a bill in equity to reach and subject property fraudulently conveyed by his deceased debtor, alleging a deficiency of legal assets, he acquires a specific lien on the property by the service of process under his bill, and is entitled to have it preserved until the rights of the parties can be finally adjudicated; and when it is shown that the administrator of the deceased debtor is also the administrator of the fraudulent grantee, is selling the property under probate decrees as belonging to the estate of the grantee, and is himslf insolvent, a receiver is properly appointed.

[Werborn's Adm'r v. Kahn.]

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WM. H. TAYLOE.

The bill in this case was filed on the 3d January, 1891, by Bernard Kahn, against Chas. F. G. Peter, as administrator of the estate of George F. Werborn, deceased, and also as the administrator of the. estate of Charles Werborn, deceased; and sought to reach certain personal property in the hands of the defendant as administrator, which was alleged to have been fraudulently conveyed by said George F. to said Charles Werborn, and to subject it to the satisfaction of complainant's claim as a creditor for contribution from George Werborn's estate, for the amount paid by him in full payment and satisfaction of a decree rendered against one Adolph Proskauer on final settlement of his accounts as guardian of Emma M. Heineman.

According to the allegations of the bill, letters of guardianship on the estate of said Emma Heineman, a minor, were granted by the Probate Court of Madison county, on the 5th November, 1878, to said Adolph Proskauer; and he gave bond in the penalty of $22,000, with complainant and said George F. Werborn as his sureties. Proskauer was succeeded in the guardianship by John H. Sheffey, and on final settlement of his accounts, December 27, 1886, a decree for $16,066.79 was rendered against him. An execution was regularly issued on this decree, and returned "No property found;" and executions were then issued against the sureties on his bond, which were also returned "No property found." Geo. F. Werborn had for many years been engaged in business in Mobile as an upholsterer, and on the 26th October, 1886, while the settlement of Proskauer's guardianship was pending, he transferred his entire stock in trade, with outstanding notes and accounts, and substantially all of his other property, to Charles Werborn, who was his brother. The property transferred was worth about $25,000, and the consideration of the transfer, as expressed in the bill of sale, was an indebtedness by said George F. to Charles Werborn amounting to $13,323.33, and the latter's undertaking to pay outstanding debts of George F., aggregating about the same amount. On the 22d May, 1889, complainant effected a compromise and settlement of the probate decree against Proskauer, by paying $4,900; and the compromise being reported to the court, and by it confirmed, satisfaction of the decree was entered of record. Charles Werborn died in Mobile, in April, 1890, and his will having been duly admitted to probate, letters testamentary were granted in May, 1890, to George F. Werborn as executor. George F. Werborn died in Mobile, in October, 1890, and letters of

[Werborn's Adm'r v. Kahn.]

administration on his estate were afterwards granted to Chas. F. G. Peter, the defendrnt in this case, who also qualified as administrator *de bonis non* of the estate of Charles Werborn.

The bill alleged that the conveyance or transfer by George F. to Charles Werborn was executed with the intent to delay, hinder and defraud the creditors of the grantor, particularly the minor whose guardian Proskauer was, and to put his property beyound the reach of legal process against him as Proskauer's surety; that Charles Werborn had knowledge of this fraudulent intent, and actively participated in carrying it into effect; that the indebtedness from George F. to Charles Werborn, as recited in the bill of sale, was greatly exaggerated, if not entirely simulated; that the defendant was insolvent; that he was disposing of the goods conveyed by the bill of sale, as the property of Charles Werborn's estate, under orders of sale granted by the Probate Court; that the penalty of his bond as Charles Werborn's administrator was $2,500, and as administrator of George F. Werborn's estate was only $250; and that George F. Werborn's estate had no property which could be subjected by process at law to complainant's claim for contribution, for one half of the amount paid in compromise and satisfaction of the probate decree, and an additional sum paid as counsel fees in effecting the compromise. The bill prayed that the conveyance by George F. to Charles Werborn be declared fraudulent and void, and set aside on that ground; that the property conveyed by it, or so much thereof as remained in the hands of the defendant, be subjected to the payment of complainant's claim for contribution, and that a receiver be appointed to take possession and control of it.

On the filing of the bill, and the affidavits submitted by the complainant, the register appointed a receiver without notice to the defendant. The defendant appealed to the chancellor from this order, and he afterwards filed a demurrer to the bill for want of equity, and also entered a motion to dismiss it for want of equity. These several matters being submitted to the chancellor, he rendered a decree overruling the demurrer and the motion to dismiss; and having received additional affidavits from each party, he further ordered that the receiver be continued, but made the order conditional on the execution of a bond by the complainant in the penalty of $6,000, the condition being that, if he failed in the suit, he should pay the defendant "all such costs and damages as he may sustain, either as an individual or as administrator, from said appointment or the continuance thereof." The defendant appeals from this decree, and assigns each part of it as error.

F. G. BROMBERG, for the appellant, cited *Moritz v. Miller*,

[Werborn's Adm'r v. Kahn.]

87 Ala. 331; *Dollins v. Lindsey*, 89 Ala. 217; *Hughes v. Hatchett*, 55 Ala. 635; *Randle v. Carter*, 62 Ala. 95; *Weis v. Goetter, Weil & Co.*, 72 Ala. 259; *Iron Works v. Foster*, 54 Ala. 634; 3 Edw. Ch. 296, 346; Hopk. Ch. 429; High on Receivers, §§ 106, 111, 113, 427, 452, 706–16; *Keel v. Larkins*, 72 Ala. 500; *Quarles v. Grigsby*, 31 Ala. 172; 2 Pom. Equity, §§ 817, 1154.

CLARKES & WEBB, *contra*.

CLOPTON, J.—The equity of the bill, which is filed by appellee, is sustainable on complainant's right to contribution. In respect to this matter, the case made is, complainant and George Werborn, an intestate of appellant, were co-sureties on the guardian bond of Adolph Proskauer, and, as such sureties, became liable for the amount of a decree—about sixteen thousand dollars—rendered in the Probate Court, December 27, 1886, against Proskauer on the final settlement of his guardianship. In May, 1889, complainant, in compromise and satisfaction of the decree, paid the succeeding guardian the sum of forty-nine hundred dollars, and obtained a full acquittance and discharge of all the obligors on the bond from further liability under the decree, or on the bond. The compromise was reported to, and confirmed by the court appointing the guardian with whom it was made, and satisfaction of the decree was entered on the record. If these allegations be true, complainant has discharged the entire liability against himself and his co-surety, so that the latter could never be required to pay anything to a succeeding guardian, or to the ward. This clearly entitles complainant to contribution from the co-surety, to the extent of a moiety of the amount paid to obtain the release and discharge; and he may come into equity to enforce and recover it, notwithstanding there may be a remedy at law. This rule is well settled.—*Pegram v. Riley*, 88 Ala. 399; *Stallworth v. Preslar*, 34 Ala. 505; *Hanley v. Heflin*, 84 Ala. 600. The fact that complainant satisfied the decree, and obtained the discharge, by the payment of a sum less than one-third of its entire amount, does not affect his right to contribution. The co-surety can not complain that the amount of his liability is thereby reduced to less than his share of the original demand; nor can he take the benefit of complainant's compromise and settlement and repudiate its burdens.—*Stallworth v. Preslar*, *supra*.

The contention of defendant—that complainant forced the guardian to compromise, by withholding his own property from appropriation to the satisfaction of the decree, and avail-

ing himself of Werborn's sale of his property, which he now alleges to be fraudulent—is not supported by any matter apparent on the face of the bill. A motion to dismiss for want of equity, as well as a demurrer, must be based on the case made by the bill. On demurrer and such motion, the answer, though filed, is not before the court, except so far as the demurrer may, under the statute, be incorporated therein; and no new fact set up in evidence can be looked to. This is matter which arises on the final hearing. Neither will we consider complainant's right to contribution in reference to the sum paid an attorney for his services in effecting the settlement, or to the creditors of the Alabama Gold Life Insurance Company on account of shares of the stock of the corporation, which he claims to have redeemed for the benefit of himself and Werborn; there being no demurrer going specially to such parts of the bill.

For the enforcement and payment of the amount which may be due complainant, the bill seeks to reach and subject property alleged to have been fraudulently sold and conveyed by Werborn. It avers that, after proceedings were commenced in the Probate Court, to compel Proskauer to make a final settlement of his guardianship, and before the rendition of the decree, George Werborn conveyed by written instrument to his brother, Charles Werborn, substantially all his property, consisting of his entire stock of goods, *choses* in action, household and office furniture, and other mentioned articles, for the fraudulent purpose of preventing the same from being subjected for the payment of whatever decree might be rendered against Proskauer as guardian. The facts, in which the fraud is supposed to consist, are specifically stated. To a proper understanding of the question involved in this aspect of the bill, it should be stated that defendant is the duly appointed administrator of the estates of both George and Charles Werborn. The right of complainant to file the bill, for the purpose of reaching and subjecting to his demand property fraudulently conveyed by George Werborn in his life-time, does not depend upon the effect and construction of section 3544 of the Code, which authorizes a creditor without a lien to file a bill in chancery to subject for the payment of his debt property fraudulently conveyed by his debtor. Before the statute was enacted, this court asserted the principle, that a creditor of a deceased debtor, without having obtained judgment and exhausting his legal remedies, may come into equity to subject to his demand property fraudulently conveyed by the debtor while in life, there being a deficiency of legal assets. Commencing with *Pharis v. Leachman*, 20 Ala.

662, and extending to the present time, this court has uniformly maintained bills of this character.—*Houston v. Blackman*, 66 Ala. 559. The equity of bills of this class rests on the principle, that when the legal assets are insufficient, and the administrator, because bound by the fraud of his intestate, can not administer the property subject to the claims of creditors, the Court of Chancery only can grant full and proper relief. Such bills depend upon the original and primary jurisdiction of courts of equity in matters of administration and marshalling the assets of the estate for the enforcement of the claims of creditors—a jurisdiction distinct and independent of that to which creditors of a living debtor, whose claims are not connected with an administration, can resort. *Lehman v. Meyer*, 67 Ala. 396. The bill avers a deficiency of legal assets, which is all that is required to impart equity. *Battle v. Reid*, 68 Ala. 149.

Complainant's right to contribution did not arise until payment of the sum received in full satisfaction of the decree, which was in May, 1889. The causes of demurrer based on the *laches* of complainant, and the statute of limitations of one year, are not well founded. The possession of a fraudulent vendee of personal property must continue, under the statute of limitations, for six years, to give him title as against a creditor of the vendor.—*Snodgrass v. Bank of Decatur*, 25 Ala. 161.

Two days after the bill was filed, the register, on application of complainant, appointed a receiver without notice to defendant. From his order, defendant took an appeal to the chancellor, who, after hearing the same, decreed that the appointment of a receiver by the register be vacated and annulled, unless complainant executed, within three days, a bond with good and sufficient sureties, in the sum of seven thousand dollars, payable to, and approved by the register, and conditioned that, if complainant failed to subject the property to his demand, he will pay all such costs and damages which any person has sustained, or may sustain, from the appointment or continuance of a receiver. By a subsequent order, the time for filing the bond was extended a few days longer, and the amount reduced to six thousand dollars. The required bond having been executed, the chancellor ordered "that the receivership heretofore granted in said cause be, and the same is hereby, continued until the further order of the court."

It is insisted, that the order of the chancellor should be reversed, and the receiver discharged, for the reason, that he was appointed by the register without notice to defendant, and without a good reason being shown for failure to give the

[Werborn's Adm'r v. Kahn.]

same. It may be conceded, that no good reason was shown for not giving notice of the time of the application to the register for the appointment of a receiver. On the hearing of the appeal from his order, the chancellor was authorized to receive additional affidavits from either or both parties, hear and determine the matter as on an original application, and, if deemed necessary or proper, to continue the appointment of the register, though made without notice, and without a reason being shown for not giving notice.—*Heard v. Murray*, at present term. This was the course pursued in this case. The chancellor received other affidavits, and the answer of defendant, which had been filed, was also submitted to him. He had the opportunity of being heard. This distinguishes the case from *Moritz v. Miller*, 87 Ala. 31, which was an appeal to this court from an order of the lower court, appointing a receiver without notice; not preceded by an order of the register.

This fairly raises the question, whether the facts justified the appointment of a receiver. By filing the bill, and service of process, complainant acquired a specific lien on the property. To make his lien effective, he has a right to have the subject of litigation preserved until the rights of the parties can be finally adjudicated, and for this purpose the appointment of a receiver, if there be a reasonable probability of subjecting the property to his demand, and there is danger of loss from misconduct or insolvency, if permitted to remain in possession of defendant.—*Ashurst v. Lehman*, 86 Ala. 370. The demand of complainant is not seriously controverted; defendant in his answer merely expresses ignorance of the facts. While the answer denies, in general terms, the allegations of the bill—that George Werborn was not indebted to Charles Werborn in any sum whatever, or, if indebted to him, it was an amount far less than the sum stated in the bill of sale or transfer of the property, and that the amount of such indebtedness was grossly exaggerated to conceal the fraudulent character of the transaction—there is no denial that the sale was made after the proceedings were commenced against Proskauer as guardian, and before the rendition of the decree. Also, that it embraced his entire stock of goods, household and office furniture, substantially all his property, is not controverted. It further appears that George and Charles Werborn were brothers. The date of the bill of sale, which is set out in the answer, substantiates the averment of the bill as to the time when it was made. The fact set up in the answer, that the partnership of which complainant was a member received one thousand dollars, which the bill of sale specifies

[Werborn's Adm'r v. Kahn.]

Charles Werborn agreed to pay as part of the consideration, is not sufficient, on the application for a receiver, where the right to the property can not be determined, to overcome the reasonable probability of subjecting it to complainant's demand, created by the foregoing facts.

The bill, which is verified, further avers that defendant had disposed of a large portion of the property, collected sundry debts, is carrying on the same business, using therein and disposing of the remaining goods and other property ; that a large portion thereof has been and is now being sold at public auction, and that defendant has no property subject to execution. The answer does not deny these averments, but sets up in avoidance that the sales, which the defendant has made, have been sales of the stock of goods under orders of the Probate Court, and the proceeds are deposited in bank. Defendant also claims a large sum of money due him for labor expended in preparing the goods for sale, and one thousand dollars as exempt from administration.

As a general proposition, a court of equity will not interfere with the administration of an estate, by taking the property from the administrator, and placing it in the possession of a receiver, unless there is manifest danger of irreparable loss. The reason on which the rule rests is, that the administrator derives his authority from, and is, in a qualified sense, an officer of the Probate Court, which ordinarily has the power to afford creditors necessary protection, so that there can but seldom arise a necessity for other preventative or protective remedy. This reason does not exist in a case like the present. Complainant is not a creditor of the estate of Charles Werborn, and the bond of defendant as administrator of that estate can afford him no protection. No property is taken from defendant, which he holds as administrator of George Werborn. As complainant seeks to reach and subject to a demand against the estate of George Werborn property held and claimed by defendant as assets of the estate of Charles Werborn, the propriety of appointing a receiver depends on the same principles as if Charles Werborn were living, and possessed and claimed the property.

On examination of the whole case, we are not prepared to say that the chancellor erred in continuing the receivership. We come to this conclusion less reluctantly, in consideration of the fact that the chancellor required complainant, as a condition precedent, to give bond fully protecting defendant, and the estate of Charles Werborn, against all damages resulting therefrom, if complainant should be unsuccessful in his suit. Were all the chancellors to adopt the same course,

[Central Railroad & Banking Co. v. Vaughan.]

much injustice and injury, which oftentimes ensue, would be avoided.

Affirmed.