# Washington, Admr. *v.* Norwood.

*Bill in Equity by Administrator of Surety to have Conveyance of Land of Co-surety declared fraudulent and the Lands subjected to the Payment of Debt due Complainant's Intestate.*

1. *Bill to set aside fraudulent conveyance; is suit for recovery of land; governed by statute of limitations.*—A bill filed by an existing creditor of a grantor to have set aside a fraudulent conveyance of land by the debtor, is a suit in equity for the recovery of land, and is governed by the statute of limitations of ten years. (*Tyson, J., dissenting.*)

2. *Surety and existing creditor of co-surety; when action can be maintained.*—A surety is an existing creditor of a co-surety from the date of the execution of the common obli-

gation, and as such is entitled to protection against a fraudulent conveyance made by his co-surety at any time subsequent to the execution of the common obligation; but he can not maintain an action to enforce his right until the demand becomes due and payable.

3. *Contribution; when right of action accrues.*—The right of contribution at law or in equity accrues only when one surety pays more than his share of the common liability.

4. *Right of surety to maintain bill against co-surety to set aside fraudulent conveyance; statute of limitations of ten years.* Where a surety on an administrator's bond, before the final settlement of the administration, conveys lands to a third party, his co-surety can, at any time within ten years after the final settlement of the administration, maintain a bill to set aside said conveyance as fraudulent against him as an existing creditor, although the grantee in said conveyance had been in the continuous possession of the property so conveyed, claiming it as his own, for more than ten years before the filing of such bill; the cause of action of the complainant in such suit not having accrued, and, therefore, the statute of limitations not having commenced to run, until the final settlement of the administration, which was within the ten years necessary to complete the bar under the statute. (*Tyson, J., dissenting,* holds that under the statute of limitations of ten years, which is a statute of repose, the grantee, by his adverse possession of the lands, acquired an absolute and indefeasible title thereto, which was a complete defense to the maintainance of such bill.)

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellant as the administrator of the estate of William Washington, deceased, against the appellee, S. W. Norwood. The purpose of the bill and the facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

The appeal is prosecuted from a decree of the chancellor sustaining the sufficiency of a plea interposed by the defendant to the bill, and the rendition of this decree is assigned as error.

J. E. BROWN and MARTIN & BOULDIN, for appellant. An action to set aside a fraudulent conveyance of lands, at the suit of an existing creditor of the grantor, is a suit in equity for the recovery of lands, and is governed by the statute of limitation of ten years. Code of 1896, § 674; *Werborn v. Kahn,* 93 Ala. 201; *Proskauer v. People's Sav. Bank,* 77 Ala. 257; *Scruggs v. Decatur M. & L. Co.,* 86 Ala. 173; *Lockard v. Nash,* 64 Ala. 385; *Snodgrass v. Bank of Decatur,* 25 Ala. 161.

Such an action can, in no case, be maintained until the cause of action accrues,—until the demand becomes due and payable.—*Jones v. Massey,* 79 Ala. 370; *Mc-Ghee v. Importers' Nat. Bank,* 93 Ala. 192; *Frieder v. Strauss,* 92 Ala. 469, 471; *Bragg v. Patterson,* 85 Ala. 233; *Truss v. Miller,* 116 Ala. 497; note to *Ladd v. Judson,* 66 Am. St. Rep. 289 *et seq.*

A surety is an existing creditor, entitled to protection against a fraudulent conveyance made by his co-surety at any time subsequent to the execution of the common obligation.—*Bibb v. Freeman,* 59 Ala. 612; *Werborn v. Kahn,* 93 Ala. 201; *Yeend v. Weeks,* 104 Ala. 331, 241; *Keel v. Larkin,* 72 Ala. 493; *Fearn v. Ward,* 80 Ala. 555; *Bragg v. Patterson,* 85 Ala. 233; *Jenkins v. Lockard,* 66 Ala. 377, 381.

The right of action for contribution, at law or in equity, accrues when one surety pays more than his share of the common liability.—*Yeend v. Weeks,* 104 Ala. 331, 341-2; *Keel v. Larkin,* 72 Ala. 493, 500-1; *Werborn v. Kahn,* 93 Ala. 201, 206; *Babcock v. Carter,* 117 Ala. 579, 580; *Bragg v. Patterson,* 85 Ala. 233, 235; *Bibb v. Freeman,* 59 Ala. 612; *Jenkins v. Lockard,* 66 Ala. 377, 381; *Presler v. Stallworth,* 37 Ala. 402, 405; *Stallworth v. Presler,* 34 Ala. 505.

The statute of limitation can in no case begin to run until the cause of action accrues,—in this case from the date of payment by complainant, June 7, 1898.—Code of 1896, §§ 2793, 2795 and 674; *Pickett v. Pope,* 74 Ala. 122, 131-2; *Gafford v. Strauss,* 89 Ala. 283, 286; *Gindrat v. Western Ry.,* 96 Ala. 162, 166; *Truss v. Miller,* 116 Ala. 495, 508; *Pendley v. Madison,* 83 Ala. 484;

[Washington, Admr. v. Norwood,]

*Savannah Ry. v. Buford,* 106 Ala. 303, 313; *Swann v. Lindsey,* 70 Ala. 507, 519; 2 Brick. Dig. p. 220, § 35; *Baker v. Barclift,* 76 Ala. 414, 417; *Lawson v. Lay,* 24 Ala. 184; *Wyatt v. Rambo,* 29 Ala. 510; *Edwards v. Bender,* 121 Ala. 77; *Owen v. McGhee,* 61 Ala. 440, 447; *Werborn v. Kahn,* 93 Ala. 201, 206; *Robinson v. Pierce,* 118 Ala. 273; *Manning v. Pippin,* 86 Ala. 357; *Brown v. Campbell,* 38 Am. St. Rep. 214, 319; note to *Leeds L. Co. v. Haworth,* 60 Am. St. Rep. 207 *et seq.*; *Weaver v. Haviland,* 40 Am. St. Rep. 631; *Oom v. Superior Ct.,* 20 Am. St. Rep. 245; *Gates v. Andrews,* 97 Am. Dec. 764; Bump on Fraud. Convey., (3d ed.) 562; Angell on Limitations, 42.

J. B. TALLY and W. H. NORWOOD, *contra.*—As to property—a possession protected by the statute of limitations ripens into perfect title—even though such possession be acquired by fraud.—*Riggs v. Fuller,* 54 Ala. 141; *Vandiver v. Stickney,* 75 Ala. 225; *Snodgrass v. Bank,* 25 Ala. 161; *Boone v. Childs,* 10 Peters 223; *Barclay v. Smith,* 66 Ala. 230; *Snedicor v. Watkins,* 71 Ala. 48.

It is settled by the former decisions of this court as well as in other jurisdictions that no saving or exception other than those especially included in the statute will be implied.— *Moulton v. Henderson,* 62 Ala. 426; *Pratt v. Coal Co.,* 85 Ala. 504; *Barclay v. Smith,* 66 Ala. 230; 7 Wait's Actions & Def., p. 272. Complainant avers nothing to bring his case within any exception to the statute.—*James v. James,* 55 Ala. 252; *Thompson v. Parker,* 68 Ala. 387; *Morrison v. Stevenson,* 69 Ala. 338.

Complainant's cause of action accrued at the time when the alleged fraudulent deed was recorded—May 21, 1887. The statute then began to run—even though he then was under disability to sue. Disability to sue does not suspend the running of the statute, but the time allowed in which suit may be commenced is three years after removal of the disability.—*Black v. Coal Co.,* 85 Ala. 504; *Riggs v. Fuller,* 54 Ala. 141.

DOWDELL, J.—The bill in this case is filed by the appellant, J. F. Washington as administrator of William Washington, deceased, to set aside an alleged fraudulent conveyance, and to subject certain lands in the hands of the alleged fraudulent grantee to the payment of the debt due from the grantor to the complainant's intestate. The bill and exhibits show the following state of facts: In April, 1878, Henry Bunn died intestate in Jackson county, Ala., leaving a large estate, consisting of real and personal property. On the 1st day of June, 1878, letters of administration were duly and regularly issued by the probate court of said county to John P. and Joel S. Timberlake as administrators of said estate, who entered upon the administration, having executed a bond in the sum of $50,000, with William Washington, complainant's intestate, J. F. Martin, T. M. Allison (who are not sued, they being dead and their estates insolvent) and Samuel C. Norwood, respondent's grantor, as sureties. On the 11th day of August, 1892, said administrators made a final settlement in the probate court of said county, and decrees were rendered in favor of Beulah Bunn and John T. Bunn, minor heirs of said estate, for the respective amounts due on their distributive shares. On the 6th day of February, 1893, said decrees not having been paid, said Beulah and John T. Bunn filed their bill in chancery against said administrators, and J. F. Washington, as the administrator of the estate of William Washington, deceased, to enforce the collection of their said decrees. On the 7th day of May, 1898, said cause proceeded to final decree in the chancery court against said Washington as administrator in favor of said Beulah Bunn and John T. Bunn for the amount of their said decrees in the probate court, and which the complainant was compelled to and did pay. The present bill proceeds upon the theory that Samuel C. Norwood was liable to the complainant as co-surety with his intestate on said administration bond by way of contribution, to the amount of one-half of said decrees, and seeks to condemn the lands owned by him at the time of the execution of said bond, and subsequently

[Washington, Admr. v. Norwood,]

conveyed to his son, Samuel W. Norwood, the respondent, which said conveyance is alleged to be voluntary, fraudulent and void. The alleged fraudulent conveyance of Samuel C. Norwood to S. W. Norwood, was executed on the 17th day of May, 1887. The present bill was filed on May 6, 1899. To this bill the respondent pleaded adverse possession of the land sought to be condemned since the date of said alleged fraudulent conveyance of May 17, 1887, and the statute of limitations of ten years in bar of the suit. The cause was heard on the sufficiency of said plea, and from the decree of the chancellor sustaining its sufficiency this appeal is prosecuted.

The statute of limitations relied on as a bar to this suit is as follows, Code 1896, § 2793: "Civil suits must be commenced after the cause of action has accrued within the period prescribed in this chapter, and not afterwards."

Section 2795: "Within ten years * * * 2. Actions for the recovery of lands, tenements or hereditaments of the possession thereof, except as otherwise herein provided."

Section 675: "The provisions of this Code prescribing the time within which civil suits must be commenced after the cause of action has accrued, apply to suits commenced by bill in chancery. The defense invoked by the plea rests upon the foregoing provisions of the statute, and by them its merit must be tested. If the suit was commenced within ten years after the cause of action accrued, the plea can be no answer to the bill."

1. An action to set aside a fraudulent conveyance of lands at the suit of an existing creditor of the grantor is a suit in equity for the recovery of lands, and is governed by the statute of limitations of ten years. Code 1896, § 674; *Werborn's Adm'r v. Kahn*, 93 Ala. 201, 206; *Proskauer v. People's Savings Bank*, 77 Ala. 257; *Scruggs v. Decatur M. & L. Co.*, 86 Ala. 173; *Lockard v. Nash*, 64 Ala. 385; *Snodgrass v. Bank*, 25 Ala. 161.

2. A surety is an existing creditor, entitled to pro-

tection against a fraudulent conveyance made by his
co-surety at any time subsequent to the execution of
the common obligation.—*Bibb v. Freeman*, 59 Ala. 612;
*Werborn's Adm'r v. Kahn, supra; Yeend v. Weeks*,
104 Ala. 331, 341; *Keel v. Larkin*, 72 Ala. 493; *Fearn
v. Ward*, 80 Ala. 555; *Bragg v. Patterson*, 85 Ala. 233;
*Jenkins v. Lockard's Adm'r*, 66 Ala. 377, 381.

3.  Such an action can in no case be maintained until
the cause of action accrues,—until the demand becomes
due and payable.—*Jones v. Massey*, 79 Ala. 370; *Mc-
Ghee v. Bank*, 93 Ala. 192; *Frieder v. Lienkauff*, 92
Ala. 469; *Bragg v. Patterson, supra; Truss v. Mil-
ler*, 116 Ala. 497.  See also note to *Ladd v. Judson*,
66 Am. St. Rep. 289.

4.  The right of action for contribution at law or
in equity accrues when one surety pays more than his
share of the common liability.—*Yeend v. Weeks, supra;
Keel v. Larkin, supra; Werborn's Adm'r v. Kahn, supra;
Babcock v. Carter*, 117 Ala. 579, 580; *Bragg v. Pat-
terson, supra; Bibb v. Freeman, supra; Jenkins v.
Lockard's Adm'r, supra; Preslar v. Stallworth*, 37 Ala.
402, 405; *Stallworth v. Preslar*, 34 Ala. 505.

5.  The statute of limitations can in no case begin
to run until the cause of action accrues.—Code 1896,
§§ 2793, 2795, 674; *Pickett v. Pope*, 74 Ala. 122, 133;
*Gafford v. Strauss*, 89 Ala. 283; *Gindrat v. Railway of
Ala.*, 96 Ala. 162, 166; *Truss v. Miller, supra; Pendley
v. Madison's Adm'r*, 83 Ala. 484; *Savannah Railway v.
Buford*, 106 Ala. 303, 313; *Swann v. Lindsey*, 70 Ala.
507, 519; 2 Brick. Dig. 220, § 35; *Baker v. Barclift*,
76 Ala. 414, 417; *Lawson's Admr v. Lay's Ex'r*, 24 Ala.
184; *Wyatt's Adm'r v. Rambo*, 29 Ala. 510; *Edwards
v. Bender*, 121 Ala. 77; *Owen v. McGhee*, 61
Ala. 440, 447; *Werborn's Adm'r v. Kahn, supra;
Robinson v. Pierce*, 118 Ala. 273; *Manning
v. Pippen*, 86 Ala. 357; *Brown v. Campbell*, 38 Am.
St. Rep. 314, 319; note to *Leeds Lumber Co. v. Haworth*,
60 Am. St. Rep. 207; *Weaver v. Haviland*, 40 Am. St.
Rep. 631; *Gates v. Andrews*, 97 Am. Dec. 764; Bump,
Fraud. Conv. (3d ed.), § 562; Ang. Lim. 42.

With a statement of the above propositions this case

would be free from difficulty but for the question of adverse possession contained in respondent's plea setting up the statute of limitations in bar of the suit. In dealing with this question, it needs only to be ascertained what is adverse possession, its nature and incidents, and to avoid a confusion of it with the statute of limitations. Adverse possession may be said to be a collective fact made up of other facts which are essential, constituent elements to the creation of the collective fact. Among these constituent elements are an actual possession of the *res,* and an open and notorious assertion of claim of ownership hostile to the true owner. After its creation, it is the continuation of this collective fact without interruption for the period fixed by the statute of limitations as a bar to the commencement of a suit that renders it effective as a defense. It is the thing that puts the statute in motion as contradistinguished from the statute itself and its continuity for a definite period that completes the bar of the statute. Even after the statute has been put in motion a break or interruption in the adverse possession stops the running of the statute. Moreover, a possession to be adverse must operate to disseize or oust some other claimant of his possession or right of possession. In speaking of adverse possession, its nature and incidents, in *Pickett v. Pope,* 74 Ala. 122, 131, which was an action of ejectment by remaindermen against the grantee of the life tenant claiming to hold adversely, it was said by this court: "An adverse possession, it will thus be seen, is something more than a mere possession, accompanied with hostile claim of ownership. It is very true that, ordinarily, an actual occupancy of lands, accompanied with an open, notorious and uninterrupted claim of ownership, with intention to claim hostile to the title of the real owner, constitutes adverse possession. But this is so, only where the possession of the occupying claimant is hostile claim to the right of possession of some one else. If there be no other person entitled to present possession, there can be no repugnancy, actual or constructive, between the mere possession of the occupant and

[Washington, Admr. v. Norwood,]

the rights of any one else.　A possession, to be adverse, must, in other words, operate to disseize, or oust, some other claimant of his possession or right of possession. * * * It is an axiomatic proposition, which requires no reasoning in its support, that there can be no incompatibility between a right which exists and one, so to speak, which does not exist. The tenant for life is entitled to actual possession of the premises of which he is enffeoffed; the remainderman is not so entitled, as long as the life tenant is living.　The actual possession of the former, therefore, is rightful, and not wrongful.　It is not adverse to any right of the remainderman, but perfectly compatible with all of his rights. The latter, having no right of possession, either actual or constructive, cannot be disseized or ousted, in any proper acceptation of these words.—Tied. Real Prop., § 400; 2 Washb. Real Prop. 555.　In accordance with these views, we find that the most approved definitions of an adverse possession involve not only the idea of an actual, visible and exclusive appropriation of land, accompanied with an intention, openly avowed, to claim against the rightful owner, but to hold against one who is seized." In *Edwards v. Bender*, 121 Ala. 77, in a similar action to *Pickett v. Pope, supra*, it was said: "The statute of limitations and the doctrine of prescription apply only to those who could have the right to maintain a suit."

In *Gindrat v. Western Railway of Ala.* 96 Ala. 162, 166, a suit in equity involving the rights of remaindermen, it was said: "The possession of the defendant during his life, however long, notorious, open, adverse, and under claim of right against all the world, could not ripen into title, or afford a predicate for the presumption of a grant under the doctrine of prescription, as against these plaintiffs.　At no time during the life estate could they, or any one of them, have questioned this possession, and no *laches* in submitting to what they were without remedy to resist can be imputed to them."

While these cases relate to the right of remaindermen to sue after the termination of the life tenancy, a

right to maintain their suit against one in possession claiming title by reason of adverse possession of ten years or more is plainly rested upon the doctrine that the possession of the so-called adverse holder is not antagonistic to nor inconsistent with the rights of the remaindermen during the life of the life tenant, for not until the termination of the life-tenancy does the right of enjoyment of possession come to the remaindermen, and until this time there can be no ouster or disseizin; or, in other words, no right or cause of action has accrued which by the express terms of the statute, is the time fixed from which the period of limitations necessary to create a bar must begin to run. The statute as clearly and definitely fixes a time when the limitation commences to run as it does the period of time requisite to complete the bar, and that is, after the cause of action has accrued.—Code, § 2793. We can see no reason for withholding the application of the above principles from a suit in equity by a creditor to set aside a fraudulent conveyance made by the debtor, such an action being in its nature a suit for the recovery of land and governed by the statute of limitations the same as actions at law.—Code 1896, § 674 and authorities cited above under proposition 1. The possession by the fraudulent grantee of the co-surety, as long as the liability remains contingent, could no more be said to be antagonistic to the claim of a fellow co-surety, than the possession by the grantee of a life-tenant to the claim of the remainderman. In the latter case, the right to sue at law for the recovery of the land is postponed until the termination of the life-tenancy. In the former case, the right to sue in equity for the recovery of the land is postponed until the contingent liability becomes a fixed liability. In both cases the recovery of the possession of the land is necessary to the enjoyment of the right or claim of the plaintiff or complainant in and to the land, in the one instance, to its occupancy and use, and, in the other, to its condemnation and sale for the payment of the debt or charge impressed upon it by the law. It is evident that adverse possession can exist only against him whose

claim to the land is obstructed by such possession. A claim against land which is contingent, a right to enjoyment in the future or on the happening of a contingency, which may or may not give a right to its possession and enjoyment, cannot possibly be interfered with or obstructed by the possession of lands which is in itself rightful until the contingency happens.

To sustain the plea, it must be done upon one or the other of the two following propositions: First, the complainant's cause of action must have accrued at the date when the respondent obtained his deed and went into possession; or, second, that the statute of limitations began to run at the date when the respondent obtained his deed and went into possession, regardless of when the complainant's cause of action accrued.

In *Jones v. Massey*, 79 Ala. 370, a creditors' bill to subject property fraudulently conveyed, it was said: "It [the statute] does not exempt such suit from the general rule, which prevails in equity, as well as at law, that no suit can be maintained before the cause of action has accrued, and does not confer on a creditor the right to bring a bill to subject property to the payment of his debt before its maturity, and before he is authorized to maintain an action at law on the demand." This rule is well settled by the authorities cited under proposition 3 above.

It cannot be doubted that until a final settlement of an administration there is no ascertained liability against the sureties on the bond, and until the liability on the bond becomes fixed by the settlement, there is no cause of action, and the statute of limitations does not run in favor of the sureties. So, in this case, no right of action accrued to any one, neither the distributees nor co-sureties, until a decree of the probate or chancery court was rendered ascertaining the devastavit, and fixing the amount of the sureties' liability. If this complainant stood in the shoes of the distributees, and was bound to begin suit within the same period allowed them, the bar would not be complete, as the final settlement was made in 1892. It is just as well settled that a surety's right of action for contribution, at

law or in equity, does not arise until he has paid the debt, and he becomes, so to speak, subrogated to the right of the obligee. His right is founded in natural justice, is contingent until payment, it then becomes a fixed liability against the co-surety. In *Yeend v. Weeks,* 104 Ala. 331, 341, a bill by the administrator of a surety on an administrator's bond to set aside conveyances by his co-surety for fraud, and for contribution, it was said: "Another principle equally well settled is, that the liability of the surety on an administrator's bond or other contingent obligation, makes him a creditor within the provisions of the statute of frauds, from the date of the contract, and though, generally, he has no *cause of action until he has paid the debt,* he is entitled to protection against fraudulent conveyances executed by the principal debtor in the meantime. As was stated in *Keel v. Larkin,* 72 Ala. 500, *supra,* the claim of the surety is considered as having existed—so far as to constitute him a creditor—at the time he incurred the contingent liability, being *debitum in presenti, solvendum in futuro;* his subsequent payment of the debt extending back by relation to the date, *although no demand, or right of action technically accrues until a subsequent date.* The surety is thus, in a sense, subrogated to the rights of the creditor, whose claim he has been compelled to pay."

In *Werborn's Adm'r v. Kahn, supra,* a bill in equity by a surety to subject personal property fraudulently conveyed by a deceased co-surety, it was said: "Complainant's right to contribution did not arise until payment of the sum received in full satisfaction of the decree."

It will thus be seen from the foregoing authorities, that while a surety is a creditor within the statute of frauds, entitled to protection against fraudulent conveyances by his co-surety, yet his right of action against such co-surety does not accrue until he has paid the common obligation.

Counsel for appellee rest their contention in support of the plea upon two cases, and only two, decided by this court—*Barclay v. Smith,* 66 Ala. 230, and

*Snedecor v. Watkins,* 71 Ala. 48—and, as we gather from the opinion of the chancellor in the record, upon these two authorities he bases his decree sustaining the sufficiency of the plea.　In the first-named case, it was decided, that the purchaser of lands which were at the time subject to an execution lien, might hold adversely from the date of the conveyance as against a purchaser at a subsequent sale under the execution.　We do not think this case as an authority is in conflict with the views we have expressed above, and it can be differentiated from the case at bar.　Adverse possession runs not only against one holding title with a right of possession, but also against any person having a claim against the land with a right of action.　In *Barclay v. Smith,* the execution creditor at the time of the conveyance by the debtor had a present right of action to proceed against the land; or, in other words, his cause of action had accrued to him.　Hence the statute of limitations was put in operation at the very moment adverse possession by the grantee of the debtor arose.　The title of the purchaser at a subsequent sale under the execution was derived through the lien of the execution and the sale thereunder.　The title of the purchaser at the execution sale having its origin or inception in the execution and the lien it created, against which lien as a claim or right the adverse possession of the debtor's grantee operated, such title as creating a cause of action was infected with the infirmities attending the origin from which it sprung; or, in other words, as an accrual of a cause of action to the purchaser under the title derived through the execution sale, it could not operate to change the time when the statute of limitations was put in motion as against the lien of the execution by the adverse possession of the grantee of the debtor.

In the case of *Snedecor v. Watkins, supra,* which was a bill to set aside a fraudulent conveyance made by the surety on a guardian's bond, the facts show that the complainant's cause of action against the surety accrued more than ten years before the filing of the bill.　And the right to file the bill against the fraudulent grantee

to set aside the conveyance and condemn the land to the complainant's demand arose immediately upon the accrual of the complainant's cause of action against the surety. As against this right of the complainant to proceed against the land the adverse possession of the voluntary or fraudulent grantee put in motion the statute of limitations as soon as the right to sue arose, and not until such right accrued. To hold otherwise would result in the anomalous state of the running of the statute of limitations when there was no debt or demand against which to run, and no person with a right to sue. We cannot assent to what was said in *Snedecor v. Watkins*, that "it does not change the case that the right of the complainant to proceed against the guardian's surety arose within ten years before the commencement of this suit, as the purpose of the proceeding is not to obtain a personal judgment on the debt, nor is it a suit for the land." In the first place the facts in that case did not present for decision the question in the foregoing quotation, for more than ten years had elapsed at the filing of the bill since the complainant's cause of action had accrued. In the next place the facts in *Barclay v. Smith* made an entirely different case, and when properly understood cannot be considered as an authority for the doctrine asserted in the above extract from the opinion in *Snedecor v. Watkins*. To adhere to such a doctrine would be not only to oppose the plainest principles of right and equity, but it would also be to ingraft upon the statute by judicial decision a provision which the lawmaking power in its enactment did not contemplate and the very language of the statute forbids.

Our conclusion therefore is, that while the complainant as a co-surety was a creditor within the statute of frauds, and entitled to protection as against voluntary and fraudulent conveyances, yet his cause of action did not accrue until he paid off and discharged the common obligation; and in no event could his cause of action have accrued until the final settlement by the administrators in 1892, which was within the ten years necessary to complete the bar under the statute, and

[Washington, Admr. v. Norwood,]

that until such time the possession by the fraudulent grantee could in no sense be said to be antagonistic to any right or claim of the co-surety in the land, and therefore there could be no adverse possesion by such grantee as against such co-surety of the fraudulent grantor necessary to put the statute of limitations in motion.    The decree of the chancellor sustaining the sufficiency of the plea must be reversed and the cause remanded for further proceedings.

TYSON, J., *dissenting.*—The theory of the opinion in this case is, that this suit is for the recovery of lands, or in the nature of a suit for their recovery.    That as the complainant's cause of action against the alleged fraudulent grantee did not arise until a short time before the filing of the bill, the statute of limitations did not commence to run in his favor, or rather against complainant's right of action, until the cause of action accrued.    I do not make an issue with the majority of the court upon the proposition that the complainant's cause of action accrued only a short time before the filing of the bill as against the fraudulent grantor; but I find nothing in the statute of limitations which excepts from its operation the running of the statute in favor of the respondent, conceding that he acquired possession of the lands under a fraudulent conveyance.    And unless it can be held that the possession of lands of a grantee under fraudulent conveyance can never become adverse, but must be referred to the fraudulent conveyance under which he entered and took possession without reference to the length of time he may have been in possession of the lands at the time of the filing of the bill, the position taken by my brothers is wholly untenable.    It would be well to observe that we must bear in mind that the creditor, upon a bill filed to declare fraudulent and void a conveyance by his debtor, must have two causes of action, one in his favor against his debtor, and the other against the fraudulent grantee named in the conveyance.    The former can never arise until his debt is due and owing, and the latter only after a debt is shown

to be due him and the property in the possession of the fraudulent grantee is shown to be the property of the debtor.    It is only the property of his debtor which has passed into the possession of the fraudulent grantee that he is entitled to subject to the payment of his debt, upon the theory that the conveyance is void, as against him, so long as the fraudulent grantee's possession and title must be referred to the conveyance, the property will be regarded as the property of the debtor, and not of the grantee. However, if it be true, as asserted by my brothers, that a bill filed by a creditor to subject lands in the possession of a fraudulent grantee, is a suit for the recovery of lands, then unquestionably the right of action in this case, not having accrued until a short time before the filing of the bill, the statute of limitations would be no bar to the action. This is the basic principle underlying the conclusion reached.    If unsound the entire structure erected upon it must fall.   Is it a suit for the recovery of lands?   I say it is not and that no case can be found in the books which holds it to be.

Before however discussing this question and citing the authorities in support of my contention, I will review the authorities cited in the majority opinion for the purpose of showing that they do not sustain the proposition there laid down.    In *Werborn's Adm'r v. Kahn,* 93 Ala. 201, 206, all that is decided on this point is, that "complainant's right of contribution did not arise until payment of the sum received in full satisfaction of the decree, which was in May, 1889. The causes of demurrer based on the *laches* of complainant and the statute of limitation of one year, are not well founded.    The possession of a fraudulent vendee of personal property must continue, under the statute of limitations, for six years, to give him title as against a creditor of the vendor."

In *Proskauer v. Bank,* 77 Ala. 257, 261, it is said: "The limitation which a fraudulent grantee of land may invoke for his protection, against a suit by the creditor of his grantor, is ten years—the period requisite to bar an action for the recovery of the land.    The

statute which, in actions seeking relief on the ground of
fraud, allows one year after the discovery of the facts
constituting the fraud, within which to prosecute a
suit, enlarges the time for the benefit of the creditor,
or party complaining of the fraud, where the statute
has already created a bar; and was not designed, and
does not operate, to abridge the time necessary to per-
fect a bar in favor of the fraudulent grantee."

The case of *Scruggs v. Land Co.,* 86 Ala. 173, arose
upon a bill filed for the cancellation of a conveyance
upon the ground of fraud in procuring its execution,
and undue influence exercised by the grantee over the
grantor, and is not in point.    However, it was held
in that case, that the statute of limitations of ten years
was applicable, and a defense to the bill.

In *Lockard v. Nash,* 64 Ala. 385, which was a bill
assailing a conveyance as fraudulent, it was said: "A
voluntary grantee of property is held a trustee, by
operation of law, for the benefit of the existing cred-
itors of the grantor; and when the gift is of personal
property, and is attended by no circumstances of con-
cealment, if the creditors allow six years to elapse with-
out suit to enforce their rights, the grantee may in-
voke the statute of limitations as a defense."

In *Snodgrass v. Bank,* 25 Ala. 161, it was held that
the possession of a slave by a fraudulent grantee gives
him no title under the statute of limitations as against
a creditor of the vendor, if the latter could not by rea-
sonable diligence have discovered the fraud within six
years before the levy of his execution.

I will take occasion later on to refer to the cases of
*Lockard v. Nash,* and *Snodgrass v. Bank,* for the pur-
pose of showing that they support my contention.    The
above cases are all that are cited to support the prop-
osition, that the action to set aside a fraudulent con-
veyance of land at the suit of an existing creditor of
the grantor, is a suit in equity for the recovery of the
lands.    It is obvious from the examination of the
above cases, that they do not support, in the remotest
degree, this proposition.

The sole purpose and the only result which can be

[Washington, Admr. v. Norwood,]

attained, at all events, in a suit to set aside a convey-
ance as fraudulent, is to subject the land to the pay-
ment of the debt of the grantor. The creditor of the
fraudulent grantor never had, and can never have, a
right to the possession of the lands as creditor. His
right of entry or possession of the lands never existed
and can never exist. No matter when the accrual of
his cause of action may have arisen to file a bill to
subject them to the payment of his debt, it never arose,
and can never accrue, so as to maintain a suit for
the recovery of lands, tenements, or hereditaments, or
the possession thereof. The accrual of his cause of ac-
tion, his right to subject his debtor's property, and
only his debtor's property, to the payment of his debt,
I concede, only arose in this case when he paid the
decree, which was but a short time before the filing
of this bill. But this is far from conceding that he
has the right to condemn the lands, which have be-
come absolutely the property of another, to the sat-
isfaction of his debt. I do not doubt that so long
as the grantee's title to and possession of lands
are referable to the fraudulent deed under which he
acquired their possession, they may be subjected in his
hands to the payment of the debts of his fraudulent
grantor. But when he acquires an absolute, indefeas-
ible title to them by adverse possession; in other words,
when he enters into the actual, exclusive and open
possession of them, claiming them as his own continu-
ously and uninterruptedly, for a period of ten years
next preceding the filing of the bill, just why his ad-
verse possession does not ripen into a title, independ-
ent of the deed, I am unable to comprehend, unless
it is the law that a fraudulent grantee is not entitled to
the protection of the statute of limitations as a statute
of repose, there being nothing in the statute of limi-
tations which expressly prevents as against him its
running. If the creditor's cause of action can be
said to be his right to maintain a suit for the recov-
ery of lands, why not permit him to bring his action
at law for their possession? Manifestly, it is because
he has no title, no right of entry, no right to pos-

session.   Can a fraudulent grantee invoke the protection of the statute of limitations as a statute of repose?   Before answering this question, however, it will be well to ascertain upon what principle the property in the hands of a fraudulent grantee is subjected by a creditor to the payment of his debt as the property of his debtor.   The theory of the law is, that the grantee holds the property as a trustee *in invitum* for the benefit of the creditors of his grantor.   The right of the creditor does not spring out of any contract between him and the grantee.   It arises by operation of law upon the broad principle that justice must precede generosity, and that the claims of creditors, who have parted with a valuable consideration, must be satisfied before the claims of others resting merely upon affection or generosity can be recognized.   The trust is implied or constructive.   It is created by the law. . It is imposed upon the grantee *in invitum.*   It is not an express trust, but, as we have said, an implied one.—*Lockard v. Nash, supra.*

Reverting to the question propounded, can a fraudulent grantee invoke the protection of the statute of limitations as a statute of repose?   In Bump, Fraud. Conv., § 571, it is said: "Although a fraudulent conveyance is voidable as against creditors, yet the title of the grantee is within the protection of the statute of limitations.   Nor is he precluded from claiming the benefit of the statute by the fact that he is, for some purposes, treated as trustee for the creditors, for he is merely a trustee against his will, by operation of law."

The leading case in this State on this subject, is *Snodgrass v. Bank, supra,* where the court, speaking to this question, said: "A possession under a fraudulent deed may be void, but it is no more so than one acquired by a trespass, or any other unlawful act; and against possessions of the latter character, it is clear, the statute runs.   We agree, that the statute is one of repose, and would apply it to every case of adverse possession, except where the defendant, *by fraud,* has prevented the plaintiff from obtaining a knowledge of the facts upon which his action depends; and in

such a case, the party should, under the influence of
the statute, be required to bring his suit within the
period prescribed after the discovery; but the defend-
ant should not be allowed to claim any benefit by a fraud
upon the statute."

In *Lockard v. Nash, supra*, after holding that the
donee in the voluntary conveyance was a trustee *in
invitum*, and the trust an implied or constructive one,
the court said, the statute of limitations operates to
bar the enforcement of such trust.   The same princi-
ple was recognized in *Proskauer v. Bank, supra*, and
also in *Smith v. Hall*, 103 Ala. 235.

In *Snedecor v. Watkins*, 71 Ala. 48, which the ma-
jority of the court undertake to distinguish from the
case under consideration, it is said: "It is an effort
to have the defendants, who are voluntary donees of
the lands, declared trustees *in invitum* as to the lands
conveyed to them by Bryan Watkins.  Their adverse
possession, is a complete answer to this, it having
matured by lapse of time into a good title."   Indeed,
it is the established doctrine of all the courts, that the
statute of limitations runs as against implied or con-
structive trusts.—*Martin v. Bank*, 31 Ala. 115.

The policy of the statute of limitations is to give re-
pose to titles.   "The benefits and immunities they
confer, are for the repose of adverse holders, who have
been in continuous possession, asserting ownership, for
the length of time the statute prescribes.   In favor of
defendants; 'adverse possession, open, notorious, ac-
companied with acts of ownership, bars an action for
the recovery of lands, without any reference to the
*bona fides* or color of title, under which the adverse
holder claims ownership.'—*Smith v. Roberts*, 62 Ala.
83.   'When the statute of limitations has completed a
bar, it gives to the party in whose favor it has run a
right of entry, upon which he may prosecute eject-
ment, or, if sued, defend himself.'—*Doe, ex dem., v.
Eslava*, 11 Ala. 1028." A right to lands, acquired by
ten years' adverse holding, with the exceptions the
statute provide, arms such holder with all the powers
of offense and defense, which an unbroken chain of

title confers.    The exceptions are expressed in sections 3234, 3235, 3236, 3242, 3244, 3245, 3247, 3249 and 3250 of the Code of 1876 [sections 2805, 2806, 2807, 2813, 2815, 2816, 2820, 2822, 2823, of the Code of 1896]. When a case is brought within either of the exceptions, the exception prevails, and dominates the rule.    But courts have no authority to engraft exceptions, which are not found in the statutes.    The fact that the present plaintiff was but a lien creditor, without title, when defendant took possession, is not one of the exceptions the statute provides.    The defendant Smith being in posession, and claiming ownership, the statute commenced running in his favor, even against Beard and Cox, original owners, as he received his title from the latter, charged with no trust of his creation."—*Barclay v. Smith,* 66 Ala. 230.    The principles above quoted from this case, to my mind, are conclusive of the question here involved.    The fraudulent grantee in the case under consideration, having acquired the lands from his father under an absolute deed, creating no trust, the very moment he entered upon the possession of the lands, claiming them as his own adversely to all the world, the statute of limitations began to run in his favor.    There is no exception, as we have shown, in the statute of limitations in favor of the complainant in this case, and therefore the statute must be held to be a statute of repose, to commence to run from the time he took possession of the lands and claimed to own them adversely to his grantor. It may be conceded that the facts in the case of *Snedecor v. Watkins, supra,* perhaps did not authorize the court to say that it does not change the case "that the right of the complainant to proceed against the guardian's surety arose within ten years before the commencement of this suit, as the purpose of the proceeding is not to obtain a personal judgment on the debt, nor is it a suit for the land." But the principles announced in that case, whether we regard their enunciation as dictum or not, are correct.    The fact was shown, that the fraudulent grantee had been in possession of the lands for more than ten years pre-

ceding the filing of the bill.   His possession being adverse, open, notorious, uninterrupted and accompanied with acts of ownership, completed the bar as against all the world save only such persons as are exempt expressly from the operation of the statute by certain sections of the Code.   See also *Bobb v. Woodward*, 50 Mo. 95; *Gregg v. Bigham*, 1 Hill (S. C. Law) 193; *Dodd v. McGraw*, 3 English (Ark.) 83.   In *Reeves v. Dougherty*, 7 Yerg. 222, the court held, (1.) That the statute of limitations protects fraudulent possession—the satute of limitations applies where possession was acquired by fraud; (2.) the statute of limitations is a good plea in equity where it would be good at law if the suit had been brought there except where there has been a fraudulent concealment of the cause of action; (3.) grantee of property conveyed in fraud of creditors may plead the statute of limitations to a bill filed by creditors; (4.) statute begins to run in such case when the grantee obtains possession.   In the opinion, the court, after reviewing all the cases on the subject, said: "But Mrs. Ewing [the grantee in the conveyance] was no party to the judgment; she is pursued, and her legal title (*prima facie* valid) is challenged on the ground that she paid no consideration, and aided in the fraud, and therefore she holds as trustee by implication, for those having a right to stand in Dougherty's [the grantor] stead.   Her title is just as capable of being protected as was that of Gocke, in the case of *Porter v. Cocke*.   His deed was voluntary and void as to creditors, yet adverse possession protected the title.   *   *   *   That Mrs. Ewing is entitled to avail herself of the statute, from the nature of the title by which she claims to hold, is clear; but the difficulty is, when does the act of limitations commence its operations in her favor, as against the complainants.   If from the time when the judgment was obtained, as insisted, society would have no repose under such circumstances.   *   *   *   There is no principle upon which to rest the bar other than the one stated, that the creditors must take the title as it stands between the fraudulent vendor and vendee, at the time he files his

bill or levies his execution. If time has confirmed the title to lands or slaves, or barred the remedy to recover other goods, it is in accordance with the established policy of the country, that the general repose of society is preferred to the few chance cases of hardship which the general rule inflicts. Here Dougherty kept the complainants in litigation for more than three years, and Mrs. Ewing, the fraudulent vendee, might have profited by it. But had her title been fair, she might have been unable to prove it after the lapse of time, for it was over eleven years after she took her title and possession before she was sued; and subpurchasers from her would still more need the protection of the statute. * * * But the remedy of the evil, if evil there be, is with the legislature, not the courts. We are bound to apply the law as we find it, without repealing it, in effect, by making exceptions."

The case of *Malloy v. Paul*, 2 Tenn. Ch. 156, involved the identical question involved in this case. Chancellor Cooper, in a very exhaustive and learned opinion, reviews all the cases on the subject. He said: "In *Reeves v. Dougherty*, 7 Yerg. 222, it was held that, where the possession of personal property has been acquired by a fraudulent sale, the statute of limitations begins to run from the time the fraudulent grantee obtained possession, and, if the title of the fraudulent grantor has been vested in the grantee by the statute, the judgment creditor of the grantor is barred also. The question is fairly discussed upon principle. 'The object here,' says Catron, C. J., is to aid an execution at law; to give effect to a legal writ and legal right because of the concurrent jurisdiction in equity; to relieve against the fraudulent conveyance tending to hinder the creditor of the grantor.' * * * 'The complainants come in asserting their debtor's right to the property, treating—as they have the right to do—the fraudulent conveyance as merely void.' * * * 'But the debtor's right of property was gone when the bill was filed, and the complainants are equally barred.' 'There is,' adds the learned judge, 'no fair distinction between a lien by execution and a lien by an implied trust otherwise arising.' At most, the

idea is, the fraudulent vendee holds as a trustee by implication, and the statute of limitations always runs in favor of such trustees. . . *    *    * 'There is no principle,' continues the court, 'upon which to rest the bar, other than the one stated, that the creditor must take the title as it stands between the fraudulent vendor and vendee at the time he files his bill or levies his execution. If time has confirmed the title to lands or slaves, it is in accordance with the established policy of the country that the general repose of society is preferred to the few chance cases of hardship which the general rule inflicts.' *    *    *   It will be seen, from this review of the cases, that the question as to the point of time when the statute of limitations begins to run, in favor of a fraudulent vendee of land against the creditors of the vendor, cannot be considered as positively settled by the decisions. There is, it is true, a direct decision that it begins to run only from the date of the judgment. But the decision is somewhat shaken by the subsequent reference to it in *Knight v. Jordan.* Moreover, when we seek to ascertain the principles which underlie the decisions, it is clear that *Reeves v. Dougherty,* and *Knight v. Jordan,* have the better basis. *Jones v. Read* rests upon a literal and forced construction of the second section of the act of 1819. For that section (which provided that all actions for the recovery of lands shall be brought within seven years after the accrual of the right or cause of action) must, upon the plainest rules of statutory exegesis, be construed in connection with the first section, which vests an indefeasible title after seven years' adverse possession,—a positive provision directly annulled by the construction put on the second section. The right to sue, the statute contemplates as contemporaneous with the possession, and the provision of the second section is only the converse of the provision of the first section. To allow a right perfected by the statute, under the first section, to be set aside in favor of a party who acquires his right twenty years afterwards, but through a party to the original transaction who is himself barred, is absurd. It was the supposed hardship on the creditor that produced the decision in *Jones v. Read,*

[Ayres v. Craft, *et al.*]

It was a case for legislation, but not judicial legislation."

The majority opinion entirely leaves out of view the purpose of the statute of limitations as a statute of repose, and engrafts upon section 2595, which provides that the limitation of ten years shall bar all actions for the recovery of lands, tenements, and hereditaments, or the possession thereof, an exception in favor of the complainant.